## S00A0203. HAMM v. RAY et al.
### (531 SE2d 91)

CARLEY, Justice.

The State Board of Pardons and Paroles (Board) paroled George Hamm, subject to both standard and special conditions. Thereafter, Hamm filed a petition for writ of mandamus to compel the Board to remove certain of the conditions of his parole. The trial court denied the petition, and Hamm appeals.

1. The Board required Hamm to pay an electronic monitoring fee and to make a $10 monthly payment to the Georgia Crime Victims Emergency Fund. Hamm contends that these two special conditions were not part of the State's parole regimen at the time of his convictions and, thus, that the Board's imposition thereof violates the ex post facto clause of the state constitution. Ga. Const. of 1983, Art. I, Sec. I, Par. X.

The ex post facto clause of the Georgia Constitution prohibits the infliction of a greater punishment than was permitted by the law in effect at the time of the commission of the offense, the subsequent criminal proscription of an act which was not a crime when done, the alteration of the quality or degree of the charge, the requirement of less or different evidence than was necessary at the time of the violation, and the deprivation of any substantial right or immunity possessed at the time the defendant committed the act. *Love v. State*, 271 Ga. 398, 399 (1) (517 SE2d 53) (1999). "[T]he prohibition of ex post facto laws applies only to substantive, but not procedural, rights. [Cits.]" *Cannon v. State*, 246 Ga. 754, 755 (1) (272 SE2d 709) (1980). Reparation and restitution are authorized conditions of parole under OCGA § 42-9-44 (a). The imposition of fees to reimburse Hamm's victims and the State for the costs of his crimes neither increased his punishment nor affected his substantive rights, but instead constituted a more detailed requirement regarding his obligation to make reparation and restitution as a condition of parole. *Cannon v. State*, supra at 755 (1). Moreover, the state ex post facto clause, like its federal counterpart, does not require that the courts engage in micromanagement of the endless array of the Board's adjustments to its parole procedures, merely because there is some remote risk of impact on the duration of confinement. *California Dept. of Corrections v. Morales*, 514 U. S. 499, 508 (III) (115 SC 1597, 131 LE2d 588) (1995). Accordingly, we hold that the Board's imposition of the special fee conditions does not violate Georgia's ex post facto clause.

2. Hamm's parole officer provided him with a "Sex Offender Instruction Sheet" and required him to comply therewith. This document is tailored to sexual offenders and, among other things, limits access to pornography, alcohol, and controlled substances, forbids

contact with a child under the age of 18 without the presence of a chaperone, provides for counseling and unfettered polygraph assessments, and governs reporting by the parolee to the parole officer. Hamm challenges the imposition of these conditions on the ground that he was not convicted of any sex offense.

"Any person who is paroled shall be released on such terms and conditions as the *board* shall prescribe." (Emphasis supplied.) OCGA § 42-9-42 (d) (1). "The *board*, upon placing a person on parole, shall specify in writing the terms and conditions thereof. A certified copy of the conditions shall be given to the parolee." (Emphasis supplied.) OCGA § 42-9-44 (a). The copy of the Board-prescribed conditions provided to Hamm did not include any condition related to sexual offenses. Indeed, not only has Hamm never been convicted of such a crime, there is nothing in the record which indicates that the Board believed that Hamm posed a risk for the commission of such acts. It appears that this determination was based solely upon the individual judgment of the parole officer. Pursuant to OCGA § 42-9-44 (a), the Board appropriately required that Hamm carry out the *instructions* of his parole officer. However, since only the Board can impose *conditions*, the parole officer was limited to instructing Hamm as to what was required of him so as to comply with the conditions of parole set forth by the Board. See *In re Petition of Dunn*, 488 P2d 902, 903 (Mont. 1971). Examination of the "Sex Offender Instruction Sheet" reveals that its requirements are not only instructions for complying with other Board-imposed conditions, but are themselves conditions imposed by the parole officer on Hamm. By specifying certain conditions which the Board shall impose on those convicted of a "sexual offense," the General Assembly intended that requirements which are tailored to sexual offenders be in the nature of conditions which only the Board may prescribe. OCGA § 42-9-44.1.

Moreover, this Court recently held that it is not sufficient for a probation officer to inform a defendant after sentencing of certain additional conditions of his *probation*. *Fox v. State*, 272 Ga. 163 (1) (527 SE2d 847) (2000). Likewise, certain conditions of *parole* are particularly inappropriate subjects for the exercise of discretion by individual parole officers, and are better left for the Board to specify, in the fulfillment of its role as the more detached arbiter and in the furtherance of the goal of minimizing the variation of conditions among similarly situated parolees. See *Roman v. State*, 570 P2d 1235, 1243-1244 (Alaska 1977). Conditions which are tailored to sex offenders and denominated accordingly are prime examples of conditions which individual parole officers should not be allowed to impose, due to the increased stigma attached to the identification of a parolee as a sex offender.

Therefore, the parole officer had no discretion or authority to

condition continuation of Hamm's parole on compliance with the so-called sex offender instructions. Hamm is entitled to mandamus, as he has a clear legal right to compel removal of the sex offender conditions as a term of his parole. See *Johnson v. Griffin*, 271 Ga. 663 (522 SE2d 657) (1999); *Riley v. Garrett*, 219 Ga. 345, 348 (2) (133 SE2d 367) (1963). Compare *Vargas v. Morris*, 266 Ga. 141 (465 SE2d 275) (1996).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein and Thompson, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

> A state may . . . establish a parole system, but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority.

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U. S. 1, 7-8 (99 SC 2100, 60 LE2d 668) (1979). Georgia has chosen to afford broad discretionary power and authority in the Board with respect to the grant of parole and the supervision of paroled prisoners. OCGA §§ 42-9-20, 42-9-21, 42-9-40. This includes the determination of an inmate's ultimate fitness for parole relief, the discretion to impose terms of parole without the additional requirement that there exist a direct relationship between the instruction and the criminal offense, and the authority to supervise all persons placed on parole. This process is clearly designed to serve the parole statute's primary goal to protect society, OCGA § 42-9-40 (a), while fostering individualized decision making in parole actions.

A standard condition of parole required Hamm to "carry out the instructions of his or her parole supervisor, and, in general, so comport himself or herself as the parolee's supervisor shall determine." OCGA § 42-9-44 (a). It is the majority's characterization of these instructions to which I dissent. Although the instructions are misleadingly entitled "sex offender instruction sheet," it is without dispute that Hamm was never expected to comply with the OCGA § 42-9-44.1 mandatory sexual offender registration requirement. The remaining instructions which included, inter alia, violence counseling and supervision, and limits on accessibility to pornography, alcohol, controlled substances, and underage children were justified given Hamm's history of multiple kidnapping, armed robbery, aggravated assault, and motor vehicle theft convictions.

While I agree with Division 1 of the majority opinion that the

trial court correctly ruled that the special conditions attached to Hamm's parole by the Board are not subject to mandamus, I disagree that the instructions provided to Hamm constitute a "condition" which can only be imposed directly by the Board, rather than under the general powers delegated by the Board to carry out the intent of the parole statute. It is my opinion that there existed an absence of any showing by Hamm that the challenged instructions were imposed in an arbitrary or punitive manner so as to constitute the gross abuse of discretion required for mandamus to issue. *Vargas v. Morris*, 266 Ga. 141 (2) (465 SE2d 275) (1996). Accordingly, I dissent.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED MAY 30, 2000 —
RECONSIDERATION DENIED JULY 28, 2000.

George Hamm, *pro se.*
*Thurbert E. Baker, Attorney General, Christopher S. Brasher, Assistant Attorney General*, for appellees.