S06A1956. CHANDLER v. THE STATE.

(642 SE2d 646)

HINES, Justice.

Emory Steve Chandler appeals his convictions for malice murder, armed robbery, tampering with evidence, and making false statements to a government agency, in connection with the death of Doyle Wayne Coleman, Sr. For the reasons that follow, we affirm.[1]

1. Chandler asserts that the evidence was insufficient to support his convictions, contending that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except that of his guilt. See OCGA § 24-4-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

Construed to support the verdicts, the evidence showed that on December 2, 2004, Doyle Wayne Coleman, Sr., was killed by at least five blows to the head; he was at his store where he sold produce and sundries. On that day, a prospective customer found the door to the

---

[1] Coleman was killed on December 2, 2004. On March 4, 2005, a Newton County grand jury indicted Chandler for malice murder, felony murder while in the commission of armed robbery, felony murder while in the commission of aggravated assault, armed robbery, aggravated assault, tampering with evidence, and two counts of making a false statement in a matter within the jurisdiction of a State agency. Chandler was tried before a jury September 6-9, 2005, and found guilty of all charges. On October 21, 2005, he was sentenced to life in prison for malice murder, a consecutive life term for armed robbery, a term of ten years in prison for tampering with evidence, to be served consecutively to the armed robbery term, and two terms of five years in prison for the two counts of making a false statement in a matter within the jurisdiction of a State agency, to be served consecutively to the term for tampering with evidence, and with each other; the charges of felony murder were vacated by operation of law and the aggravated assault charge merged with the malice murder count. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Chandler moved for a new trial on October 25, 2005, and amended the motion on November 3, 2005. The amended motion was denied on March 30, 2006. Chandler filed his notice of appeal on April 6, 2006, the appeal was docketed in this Court on July 26, 2006, and submitted for decision on September 18, 2006.

store padlocked at 1:30 p.m., and trash burning in an unattended barrel. At 3:53 p.m., a deliveryman attempted to deliver a letter, but the door was padlocked; he looked for an alternate entry, saw legs lying on the floor of the store that he believed belonged to a mannequin, and left the letter under the door. Coleman's body was discovered at 4:30 p.m. on December 2, 2004. No wallet or cash was found on him. The day after Coleman's death, Chandler paid a portion of his overdue rent, using two $50 bills.

On December 14, 2004, Coleman's son attempted to use the decedent's cell phone and discovered a message from a fast food restaurant stating that Coleman's wallet had been recovered in the restaurant's lavatory. The employee who found the wallet testified that he was delayed in cleaning the restroom on the afternoon of December 2, 2004 because the door was locked. When he returned, the door was unlocked and the restroom was in disarray as though "someone had bathed in the bathroom." Coleman's wallet was lying open in front of the toilet; there was no money in it. The restaurant's manager telephoned a number she found inside the wallet and left a message that the wallet had been found. The restaurant and attached convenience store employed a security camera and videotape system. Coleman's son viewed the videotape of the afternoon that the wallet had been left and identified Chandler as being on the tape; he was related to Chandler by marriage.

A detective from the Georgia Bureau of Investigation interviewed Chandler, who initially denied having been at Coleman's store the day of the murder. However, police told him that two witnesses saw him with Coleman before the murder, at which point Chandler said: "the Mexicans."[2] Police also told him of the fast food restaurant videotape, and Chandler admitted going to Coleman's store to get a part for a refrigerator that Coleman had given him. He stated that he spoke with Coleman between customers, and, at Coleman's direction, left to return in a couple of hours in the hope that Coleman could locate the refrigerator part. Chandler also said that just before he left, a customer paid for pine straw with a $50 bill, and Coleman made change from a "wad of money" in his front pants pocket. Chandler said he returned to the store shortly after 3:00 p.m., and on exiting his car, found Coleman's wallet on the ground. Chandler stated that he looked in a window and saw Coleman lying dead, panicked, wiped his fingerprints from the door's padlock, left the scene, drove around in

---

[2] Through an interpreter, Esteban Hernandez, who worked for Coleman's son, testified that he and his nephew were at Coleman's store at 1:00 p.m. on December 2, 2004, and saw Coleman seated in his office talking to another man, "an American." He did not identify Chandler as that man. When Hernandez and his nephew departed, the other man remained with Coleman.

hopes of getting Coleman some help, arrived at the fast food restaurant, and placed Coleman's wallet in the men's room; but that before he did so, he took a piece of paper that contained the name and telephone number of Coleman's son, and added a note saying that Coleman needed help.[3] The cash register tape from the convenience store adjacent to the fast food restaurant indicated someone with Chandler's date of birth purchased beer at 3:28 p.m. on December 2, 2004;[4] Chandler reported only that he bought cigarettes.

Chandler was a relative of Coleman's by marriage, and knew that his sales were primarily in cash. Chandler had commented that Coleman always had a lot of cash with him and speculated that Coleman might be robbed; Chandler had even said that he might rob Coleman.

The evidence was sufficient to enable a rational trier of fact to reject the hypothesis Chandler advanced in his attempt to refute the charges and to find Chandler guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Robles v. State*, 277 Ga. 415, 417-418 (1) (589 SE2d 566) (2003).

2. In three enumerations of error, Chandler challenges the trial court's actions regarding prospective juror number 16, who, in response to questioning, reported that his sister was killed by a shotgun blast in the back and that his estranged wife was shot and killed "in a confrontation she had." The court inquired if the prospective juror "could be impartial in this case as you consider the evidence and be fair to both sides as a juror?," to which the prospective juror responded: "I'm not sure if that would, you know, affect my, you know, affect me in some way, you know. Other than that, those two things right there, you know, might." The court informed the prospective juror of what is required by the oath of a juror, and asked: "would you be able to listen to the evidence and be fair and impartial to both sides in deciding the issue if you were selected as a juror?," and the prospective juror answered: "I think so, yes sir." Defense counsel also asked if, based on the totality of the circumstances, "do you still believe that you could be a fair and impartial juror in this case?," and the prospective juror replied: "Yes. I think so."

Chandler contends that prospective juror number 16 should have been struck for cause, but that is not so.

---

[3] No such note was found in or on the wallet by the fast food restaurant employee who found it.

[4] A law enforcement officer testified that an attempt to replicate Chandler's journey from Coleman's store to the fast food restaurant resulted in a trip that spanned from 3:15 p.m. to 4:29 p.m.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. [Cit.] Before a juror is excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.]

*Somchith v. State*, 272 Ga. 261, 262 (2) (527 SE2d 546) (2000). Nothing in the prospective juror's answers indicated that he held an opinion regarding Chandler's guilt or innocence, and the prospective juror's answers to the questions required by OCGA § 15-12-164 (a) did not indicate any basis to strike him for cause.

Nonetheless, Chandler urges that the trial court engaged in "improper rehabilitation" of prospective juror number 16. But, there is no merit to this contention. The court's first attempt to clarify whether the prospective juror could be fair and impartial elicited a response that he was "not sure" but that his experiences "might" affect his ability to do so, and there was no abuse of discretion in the court's further questioning of the prospective juror in light of the juror's oath. See *Ros v. State*, 279 Ga. 604, 606 (3) (619 SE2d 644) (2005). Nor did the court err in requiring that defense counsel's question to the prospective juror pertain to the standard for excusing the juror for cause. See OCGA § 15-12-164 (d); *Hamilton v. State*, 274 Ga. 582, 583 (2) (555 SE2d 701) (2001).

3. On the authority of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), Chandler challenged the State's exercise of its peremptory strikes against five African-American members of the jury venire.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent. [Cit.]

*Thomas v. State*, 274 Ga. 156, 161 (5) (549 SE2d 359) (2001). A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be overruled unless clearly erroneous. *Barnes v. State*, 269 Ga. 345, 350 (6) (496 SE2d 674) (1998).

As the trial court did not rule as to whether Chandler made a prima facie showing of racial discrimination, but proceeded to an

evaluation of the State's explanations for its strikes, the issue of a prima facie showing is moot. *Raheem v. State*, 275 Ga. 87, 90 (4) (560 SE2d 680) (2002).

Of the race-neutral explanations the State provided for the five struck venirepersons, Chandler contends two of the reasons offered were, in fact, not racially neutral. The State explained that it struck prospective juror number 24 because he did not timely return a juror information form, indicating a lack of interest in the proceedings, that his demeanor in the courtroom indicated the same attitude, that he had been engaged in an altercation in the parking lot of a fast food restaurant, and that his finally-completed juror information form indicated that he was single with two children, ages one and two, indicating that the children were born out of wedlock, and that the prospective juror was thus not the type of conservative juror that the State was seeking.[5] Chandler asserted that two seated jurors had also not returned the juror information form, and that the State's conclusion regarding illegitimacy of the prospective juror's children was merely supposition, as no clarifying questions were asked. The State responded that the seated jurors had not displayed inattentiveness in the courtroom and their information forms did not show illegitimate children. The court stated that failing to return a juror information form could reasonably be construed as indicating a failure to take jury duty seriously, and noted that prospective juror number 24 seemed uninterested and inattentive in the courtroom, and had often slumped over with his head almost between his knees. The court did not err in finding the State's explanation for striking this juror to be race-neutral. See *Rakestrau v. State*, 278 Ga. 872, 875 (3) (c) (608 SE2d 216) (2005).

Regarding prospective juror number 26, the State declared that she was struck because she had an obvious eyebrow piercing with an eyebrow ring inserted, again indicating that she was not likely to be a conservative juror. Chandler replied that "although it's race-neutral," it seemed a weak justification for striking a juror. The court found this explanation to be race-neutral, and noted that this juror was the only one the court observed with such body art, and opined that if other such prospective jurors had been seated, its decision might be different. This was not error. The record does not reveal that the State was behaving inconsistently by seating other jurors similarly adorned. See *George v. State*, 263 Ga. App. 541 (588 SE2d 312)

---

[5] The State noted that the juror information form allowed responses of "single" and "divorced," and prospective juror number 24 checked "single."

(2003). Nor did the offered explanation turn on any racial stereotype. Compare *Rector v. State*, 213 Ga. App. 450, 454 (2) (444 SE2d 862) (1994).

4. The crimes took place on December 2, 2004, and Chandler was tried September 6-9, 2005. In 2005, the General Assembly passed the Criminal Justice Act of 2005, which amended various Code sections. Section 17 of the Criminal Justice Act of 2005 provides that it "shall apply to all trials which commence on or after July 1, 2005." Ga. L. 2005, p. 20, § 17. Chandler challenges, pursuant to the State and Federal Constitutions, the retroactive application to his trial of three statutory amendments under the Act. See U. S. Constitution, Art. I, § 9; Ga. Const. of 1983, Art. I, Sec. I, Par. X.

The prohibition on ex post facto laws applies only to substantive, not procedural, rights. See *Hamm v. Ray*, 272 Ga. 659 (1) (531 SE2d 91) (2000).

> [L]egislative acts which implicate the "core concern of the *Ex Post Facto Clause*" (*Collins v. Youngblood*, 497 U. S. 37, 41-42 (110 SC 2715, 111 LE2d 30) (1990)) under the Georgia Constitution are those which make criminal an act which was innocent when done, inflict a greater punishment than was permitted by the law in effect at the time of the offense, change the quality or degree of the offense, require less or different evidence for conviction than that required at the time of the offense, or deprive the defendant of a substantial right or immunity he possessed at the time of the offense. *Love v. State*, 271 Ga. 398 (1) (517 SE2d 53) (1999). See also *Collins v. Youngblood*, supra, 497 U. S. at 42, limiting the types of legislative acts which implicate the ex post facto clause of the U. S. Constitution to the first four listed above, and *Lynce v. Mathis*, 519 U. S. 433, 441 (117 SC 891, 137 LE2d 63) (1997) ("To fall within the ex post facto prohibition [of the U. S. Constitution], a law must be retrospective . . . and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime. . . .") (citation and punctuation omitted).

*Postell v. Humphrey*, 278 Ga. 651, 653 (604 SE2d 517) (2004). None of the statutory changes about which Chandler complains implicate these concerns, and all affected only questions of procedure.

(a) The number of peremptory jury strikes available to both the State and the defendant in a felony trial is now equal; at the time of Chandler's crimes, an accused was afforded twice as many strikes as the State. See OCGA § 15-12-165; Ga. L. 2005, p. 20, § 7. This Court

has previously declared that "strikes are procedural and not substantive in nature," and that an amendment to the number of strikes a defendant may exercise can be given retroactive effect. *Barner v. State*, 263 Ga. 365, 367 (4) (434 SE2d 484) (1993). Accord *Madison v. State*, 281 Ga. 640 (641 SE2d 789) (2007).

(b) At the time of Chandler's crimes, a defendant who did not introduce evidence was entitled to make first and last closing arguments to the jury; now the State does so regardless of whether the defendant presents evidence. See OCGA § 17-8-71; Ga. L. 2005, p. 20, § 10. Chandler asserts that the statute thus deprived him of an option he would have enjoyed under the prior law, and notes that this option has been described as an " 'extremely valuable' right." *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2002). However, the formerly-available option to refrain from introducing evidence by the defense in order to gain the order of argument desired has been termed "valuable" in reference to evaluating the reasonableness of defense counsel's strategy when a claim of ineffective assistance of counsel has been made. Id. See, e.g., *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999). It is not the sort of "substantial right" the deprivation of which the ex post facto clause protects against. Rather,

> *[t]he changes effected by the enactment constituted merely an alteration in the conditions deemed necessary for the orderly and just conduct of criminal trials and did not deprive the defendant of any substantial personal right within the meaning of the constitutional prohibitions of ex post facto laws.*

(Citation omitted; emphasis in original.) *Todd v. State*, 228 Ga. 746, 752 (187 SE2d 831) (1972).

(c) The Criminal Justice Act of 2005 also expanded the State's ability to impeach a defendant who testifies at his trial beyond that which existed at the time of Chandler's crimes. See OCGA §§ 24-9-20 (b), 24-9-84, 24-9-84.1; Ga. L. 2005, p. 20, §§ 14, 16. This modification simply alters the scope of evidence which may be presented at trial. It does not make into a crime an act that was innocent when it was performed, change the manner or degree of punishment to which Chandler may be subjected, or alter any substantive rights conferred on him by law. See *State v. Martin*, 266 Ga. 244, 245-246 (3) (466 SE2d 216) (1996) (statute altering evidence presented in a DUI prosecution); *Livingston v. State*, 264 Ga. 402 (1) (e) (444 SE2d 748) (1994) (statute altering that which could be presented in capital sentencing trial); *Eades v. State*, 232 Ga. 735, 737-738 (3) (208 SE2d 791) (1974) (statute eliminating defendant's ability to give an unsworn statement at trial).

*Judgments affirmed. All the Justices concur, except Melton, J., not participating.*

DECIDED MARCH 19, 2007.

*Anthony S. Carter,* for appellant.

*W. Kendall Wynne, Jr., District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.