313 Ga. 368
FINAL COPY

S21A0905.  BURNS v. THE STATE.

COLVIN, Justice.

In September 2018, a Fulton County grand jury returned an indictment charging James Burns, a police officer with the Atlanta Police Department, with crimes connected to a June 2016 on-duty shooting.  Burns filed a "Plea in Abatement/Motion to Quash Indictment" arguing that the State failed to provide him his substantive rights under former OCGA §§ 17-7-52 and 45-11-4.  The trial court denied the motion.  We granted Burns's application for an interlocutory appeal to review whether the 2016 amendments to OCGA §§ 17-7-52 and 45-11-4 applied when an indictment was sought after the effective date of the amendments with respect to crimes allegedly committed prior to the effective date.  While we disagree with the trial court's reasoning in denying Burns's motion, we agree that the 2016 amendments at issue apply to Burns's prosecution, so we affirm the judgment of the trial court.

1. Prior to July 1, 2016, OCGA §§ 17-7-52 and 45-11-4 provided public officials with certain special rights regarding grand jury proceedings. Former OCGA § 17-7-52 (a) provided that, before an indictment charging a peace officer with a crime could be returned by a grand jury, "the officer shall be notified of the contemplated action by the district attorney of the county wherein the grand jury shall convene and the officer shall be afforded the rights provided in Code Section 45-11-4." OCGA § 17-7-52 (a) (2001). In turn, former OCGA § 45-11-4 (f) required that a copy of the indictment be served on the accused officer at least 15 days before presentment to the grand jury. See OCGA § 45-11-4 (f) (2014). This former Code section further provided, in relevant part:

> (g) The accused shall have the right to appear before the grand jury to make such sworn statement as he or she shall desire at the conclusion of the presentation of the state's evidence. The accused shall not be subject to examination, either direct or cross, and shall not have the right individually or through his or her counsel to examine the state's witnesses. The accused and his or her counsel shall have the right to be present during the presentation of all evidence and alleged statements of the accused on the proposed indictment, presentment, or accusation, after which the accused and his or her counsel

2

shall retire instanter from the grand jury room to permit the grand jury to deliberate upon the indictment.

(h) At any time during the presentation of evidence or during deliberations, the grand jury may amend the indictment or instruct the district attorney to cause a new indictment to be drawn as in any other case. In such case, a copy of the amendment or new indictment, if it relates to the accused public official, shall be provided to the accused public official and his or her counsel.

Former OCGA § 45-11-4 (g), (h).

The General Assembly amended these statutes effective July 1, 2016. See Ga. L. 2016, pp. 186, 190-193. The legislature removed subsections (f), (g), and (h) of OCGA § 45-11-4 and substantially amended OCGA § 17-7-52. Relevant here, the 2016 amendment to OCGA § 17-7-52 requires that a copy of the indictment be served on the accused officer at least 20 days before presentment to the grand jury. See OCGA § 17-7-52 (a). The officer must be given notice "[t]hat he or she may request, but cannot be compelled, to testify as a witness before the grand jury regarding his or her conduct[.]" OCGA § 17-7-52 (a) (3). If the officer chooses to testify, "[t]he prosecuting attorney shall, after consulting with the grand jury, inform the officer in writing of the date and time when he or she

shall be present in order to testify and of the procedure that the grand jury will follow[.]" OCGA § 17-7-52 (b). The officer "will be permitted to [testify] at the conclusion of the presentation of the state's case-in-chief" and will also be further notified "that he or she may be questioned by the prosecuting attorney or members of the grand jury as are any other witnesses." OCGA § 17-7-52 (a) (4).

If the officer requests to testify as a witness before the grand jury, "he or she shall only be present in the grand jury room while he or she is testifying. Such officer may be questioned by the prosecuting attorney or members of the grand jury as are any other witnesses." OCGA § 17-7-52 (d). Prior to testifying, the prosecuting attorney is required to advise the officer that: (1) his or her "appearance before the grand jury is voluntary, and he or she cannot be compelled to appear as a witness"; (2) by agreeing to testify "he or she will be asked to testify and answer questions and may be asked to produce records, documents, or other physical evidence"; (3) the officer can refuse to answer questions or produce documents or evidence if doing so "would tend to incriminate the officer or would

4

tend to bring infamy, disgrace, or public contempt upon the officer";
(4) "[a]ny testimony given by the officer may be used against him or
her by the grand jury or in a subsequent legal proceeding"; and (5)
the officer's attorney "shall have the right to be present in the grand
jury room" during the officer's testimony.  OCGA § 17-7-52 (d) (1)-
(5).  The officer may make a sworn statement before being asked any
questions, but "[t]he officer's attorney shall not propound questions
to the officer nor object to questions propounded to the officer on
evidentiary grounds."  OCGA § 17-7-52 (e).  Finally, "[a]t the
conclusion of the officer's testimony, if any, the prosecuting attorney
may present rebuttal evidence and advise the grand jury on matters
of law."  OCGA § 17-7-52 (f).

2.    By way of background, Burns was on duty as a police
officer on June 22, 2016, when he allegedly shot and killed Deravis
Rogers in Fulton County.  On August 5, 2016, the District Attorney
provided Burns notice under former OCGA §§ 17-7-52 and 45-11-4
of the District Attorney's intent to present evidence to a grand jury
of offenses arising out of the June 2016 shooting incident.  The notice

5

included the date and time of the grand jury hearing, as well as a copy of the proposed indictment charging him with felony murder predicated on aggravated assault, aggravated assault, false statements, and two counts of violation of oath by public officer. Burns exercised his rights to be present with counsel during the grand jury presentation and to give sworn testimony not subject to cross-examination. On August 31, 2016, the grand jury returned a true bill of indictment against Burns on all proposed charges.

In July 2018, on the State's motion, the trial court entered an order of nolle prosequi on the initial indictment. The State then sought to re-indict Burns. On August 15, 2018, the District Attorney provided Burns with a copy of the new indictment and notice of the District Attorney's intent to proceed with a grand jury hearing on September 5, 2018, pursuant to the 2016 versions of OCGA §§ 17-7-52 and 45-11-4. Burns filed an "Emergency Petition for a Writ of Mandamus" against the Fulton County District Attorney, requesting that the superior court prevent the District Attorney from proceeding to the grand jury without complying with the

District Attorney's statutory responsibilities under the former versions of OCGA §§ 17-7-52 and 45-11-4. After a hearing, the superior court denied the mandamus petition. Burns then did not request to testify before the grand jury.

On September 5, 2018, the grand jury returned a true bill of indictment charging Burns with felony murder, aggravated assault, and two counts of violation of oath by public officer. Burns subsequently filed a "Plea in Abatement/Motion to Quash Indictment," arguing that, because the shooting incident occurred before the July 1, 2016 effective date of the amendments to OCGA §§ 17-7-52 and 45-11-4, the State was required to follow the prior version of the statutes. In particular, Burns asserted that he had a right to be present during the presentation of the evidence to the grand jury and to make a statement without being subjected to cross-examination. He further alleged that the District Attorney's application of the 2016 amendments to Burns's 2018 grand jury proceedings retroactively violated his substantive rights under former OCGA §§ 17-7-52 and 45-11-4, the Ex Post Facto provisions

7

of the United States and Georgia Constitutions and Georgia case law. After a hearing, the trial court denied Burns's motion on December 15. The trial court concluded that, although the statutes at issue included substantive rights, they were public rights that did not vest pursuant to *Deal v. Coleman*, 294 Ga. 170 (751 SE2d 337) (2013), and therefore could be applied retroactively. This Court granted Burns's application for an interlocutory appeal.

3. Burns argues that the trial court erred by failing to properly analyze the issue of retroactivity pursuant to *Deal*. Specifically, Burns argues that former OCGA §§ 17-7-52 and 45-11-4 created substantive, private rights, rather than substantive, public rights, as found by the trial court. Further, Burns argues that applying the 2016 amendments to the grand jury proceedings for a criminal offense that is alleged to have occurred prior to the amendments' effective date violates the constitutional prohibition against retroactive laws. See Ga. Const. of 1983, Art. I, Sec. I, Par. X. We disagree with both Burns and the trial court that former OCGA §§ 17-7-52 and 45-11-4 created substantive rights; however,

8

because the trial court reached the right result, we affirm the court's judgment. See *Merchant Law Firm v. Emerson*, 301 Ga. 609, 614 (1) (c) (800 SE2d 557) (2017) (affirming a trial court's judgment as "right for any reason").

As an initial matter, we note that the framing of this case as one about the retroactive application of the 2016 amendments is largely misguided. In its order, the trial court assumed that the statutes at issue provided substantive rights for peace officers and then delved into an analysis regarding whether the rights were public or private under *Deal*. However, this assumption was incorrect, as the crux of this case is whether the statutes at issue provide substantive rights or whether they govern only procedure of the courts.

Consistent with our precedent distinguishing between substantive and procedural laws, we conclude that the trial court erred when it assumed that the statutes at issue are substantive rather than procedural in nature. As this Court has explained, a "[p]rocedural law is that law which prescribes the methods of

9

enforcement of rights, duties, and obligations." *Polito v. Holland*, 258 Ga. 54, 55 (3) (365 SE2d 273) (1988). This Court has previously determined that various statutes that govern how the courts operate are procedural in nature. See, e.g., *Harvey v. Merchan*, 311 Ga. 811, 824 (4) (a) (860 SE2d 561) (2021) (statute of limitation was procedural rule); *New Cingular Wireless PCS v. Dept. of Revenue*, 308 Ga. 729, 732-735 (843 SE2d 431) (2020) (representational standing granted by a statute is procedural); *Willis v. State*, 304 Ga. 122, 129 (2) (b) (816 SE2d 656) (2018) (statute establishing appellate review was procedural, not substantive); *State v. Lucious*, 271 Ga. 361, 365 (4) (a) (518 SE2d 677) (1999) (explaining that a criminal discovery statute concerned "[a] defendant's right to discover scientific reports[, which] is a procedural right").

The 2016 statutory amendments at issue here are not substantive in nature as they "create[ ] no new obligations and grant[ ] no substantive rights that did not exist before." *New Cingular*, 308 Ga. at 735. Instead, the 2016 amendments merely changed the *procedures* for providing notice of a grand jury hearing

10

to an accused police officer and the *procedures* under which an accused officer may be present during and provide evidence by sworn testimony at that hearing. While these may be *important* and *valuable* rights, they are procedural, not substantive, in nature. See, e.g., *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 278 (4) (658 SE2d 603) (2008) (amended Evidence Code section governing the admissibility of expert witnesses testimony was procedural in nature); *Henderson v. Dept. of Transp.*, 267 Ga. 90 (475 SE2d 614) (1996) (holding that the notice and service provisions of the Tort Claims Act were procedural laws); *Polito*, 258 Ga. at 55 (explaining that the rules of evidence are procedural in nature). Because the 2016 amendments to OCGA §§ 17-7-52 and 45-11-4 are procedural, and because the amended statutes were in effect at the time of Burns's grand jury proceeding,[1] they governed that proceeding.

---

[1] In this case, there were no indictments or grand jury proceedings regarding Burns while the former versions of OCGA §§ 17-7-52 and 45-11-4 were in effect. All relevant indictments and grand jury proceedings occurred after the statutory amendments took effect on July 1, 2016.

Consequently, our analysis can end here.[2]

This conclusion is consistent with the precedent from this Court. As we have previously explained, "to apply a procedural statute retroactively generally does not mean that it applies with respect to prior filings, proceedings, and occurrences, but rather that the procedural change affects future court filings, proceedings, and judgments that arise from prior occurrences." *Murphy v. Murphy*, 295 Ga. 376, 378 (761 SE2d 53) (2014). See also *Landgraf v. USI Film Products*, 511 U.S. 244, 291 (II) (114 SCt 1483, 128 LE2d 229) (1994) (Scalia, J., concurring) ("The critical issue . . . is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs *after* the effective date of the statute is covered. Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a

---

[2] Relying on *Deal*, Burns argues that the trial court erred by concluding that these Code sections provide public and not private rights. However, that distinction is relevant only when a law is substantive, not procedural. See *Deal*, 294 Ga. at 176-181 (2) (a) (explaining that the distinction between "public" and "private" rights matters only for substantive laws).

different purpose and therefore a different relevant retroactivity event. A new rule of evidence governing expert testimony, for example, is aimed at regulating the conduct of trial, and the event relevant to retroactivity of the rule is introduction of the testimony. Even though it is a procedural rule, it would unquestionably not be applied to *testimony already taken . . . .*" (emphasis in original)).

Burns also argues that the trial court erred in its analysis by relying on the Court of Appeals' decision in *State v. Peabody*, 343 Ga. App. 362 (807 SE2d 107) (2017), rather than *State v. Lindsay*, 255 Ga. App. 464 (566 SE2d 41) (2002). We do not think either case is persuasive here. In *Lindsay*, the Court of Appeals concluded that, "[o]n its face," a 1990 version of OCGA § 45-11-4 afforded officers "substantive rights" to be present, and not to be subjected to cross-examination, during a grand jury proceeding. *Lindsay*, 255 Ga. App. at 469 (1) (a) (v). In coming to this conclusion, *Lindsay* relied on our decision in *Dudley v. State*, 273 Ga. 466 (542 SE2d 99) (2001). See *Lindsay*, 255 Ga. App. at 469 (1) (a) (v) nn.21 & 22. *Dudley*, however, did not distinguish between procedural and substantive laws.

13

Instead, *Dudley* simply held that the plain language of the 1997 version of OCGA § 17-7-52 expressly extended certain protections to former peace officers.  See *Dudley*, 273 Ga. at 466-467.[3]  Accordingly, *Lindsay*'s holding that the statutes at issue grant substantive rights was incorrect as it conflicts with our precedent (as discussed above)

---

[3] After the Court analyzed the plain meaning of the 1997 version of OCGA § 17-7-52, we remarked in *Dudley*:

> Moreover, determination of status as a peace officer at the time the alleged wrongful act occurred rather than at the time of the accusation or indictment for the purpose of entitlement to the protections of OCGA § 17-7-52 comports with the general precept of criminal jurisprudence that the provisions of the law existing at the time of commission of a crime control.

*Dudley*, 273 Ga. at 468.  This statement, however, did not purport to hold that rights afforded by the 1997 version of OCGA § 17-7-52 were substantive in nature.  Rather, this Court was commenting, in dicta, about various public policy rationales supporting the General Assembly's express grant of "enhanced protections" to current and former officers.  Id.  These rationales included the fact that peace officers "should have safeguards against possible frivolous indictments" because they "are often required to exercise discretion in the performance of their jobs" and "perform in situations outside the realm of the average citizen."  Id.  In addition, we noted that, for two reasons, it was sensible for the General Assembly to afford peace officers charged with committing crimes on duty the same procedural rights, regardless of whether they were current or former officers.  First, as noted in the quoted passage above, doing so would mean that a grand jury proceeding regarding a particular crime would consistently apply both the procedural and substantive law in effect at the time of the alleged crime.  See id.  Second, we noted that applying the same procedural and substantive law in effect when an alleged crime occurs "also has the [salutary] effect of thwarting the intentional discharge of a peace officer prior to prosecution in order to circumvent the statutory requirements."  Id.

14

deliniating what constitutes a substantive versus a procedural right. Therefore, it is overruled.

Turning to *Peabody*, the trial court referenced the following two statements from that decision in its order: "[s]hould the State elect to re-indict Peabody, the provisions of the 2016 version of OCGA § 17-7-52 would clearly apply," 343 Ga. App. at 367 (2), and "[a]lthough Peabody's alleged crimes occurred prior to the statute's amendments, his case was not before the grand jury until after the amendment became effective. Therefore, the amended version applies to our analysis," id. at 364 (1) n.2. These statements, while accurate, were dicta that conducted no analysis. Moreover, these statements could not overrule the Court of Appeals' previous holding in *Lindsay* that the statutes granted substantive rights. See *White v. State*, 305 Ga. 111, 121 (3) (823 SE2d 794) (2019) ("The older decisions of the Court of Appeals are binding on panels of that court until reversed or overruled by the Supreme Court or overruled by the Court of Appeals . . . ." (citation and punctuation omitted)). Consequently, *Peabody* did not apply.

Burns also argues that the trial court's order allows an unconstitutional ex post facto application of the 2016 amendments. However, because the 2016 amendments are procedural in nature, the application of these statutes to Burns's grand jury proceedings was not an unconstitutional ex post facto application of laws. See *Chandler v. State*, 281 Ga. 712, 717 (4) (642 SE2d 646) (2007) ("The prohibition on ex post facto laws applies only to substantive, not procedural, rights."). Accordingly, this contention also fails.[4]

*Judgment affirmed. All the Justices concur, except LaGrua, J., not participating.*

---

[4] In addition, Burns argues that the trial court erred when it made a verbal ruling that the issues in his motion to quash were barred by res judicata as they had been previously litigated and ruled upon in Burns's petition for a writ of mandamus. However, because the trial court did not include this verbal ruling in its written order denying Burns's motion to quash, we have no ruling to review on appeal. See *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 772 (4) (b) (815 SE2d 70) (2018) ("Moreover, until an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment.").

Decided March 8, 2022.

Motion to quash indictment. Fulton Superior Court. Before Judge Russell.

*The Findling Law Firm, Drew Findling, Marissa Goldberg, Zachary J. Kelehear*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Ruth M. Pawlak, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.