S09P1745. STINSKI v. THE STATE.
(691 SE2d 854)

THOMPSON, Justice.

A jury convicted Darryl Scott Stinski of murdering Susan and Kimberly Pittman and related crimes.[1] After finding multiple statutory aggravating circumstances, the jury recommended a death

---

[1] Stinski committed the crimes on April 10-12, 2002. He was indicted by a Chatham County grand jury on June 5, 2002, on two counts of malice murder, two counts of burglary, two counts of arson in the first degree, five counts of entering an automobile, one count of cruelty to children in the first degree, and one count of possession of a controlled substance with intent to distribute. The State filed written notice of its intent to seek the death penalty on June 17, 2002. This Court considered certain pretrial issues on interim review. *Stinski v. State*, 281 Ga. 783 (642 SE2d 1) (2007). The trial began with jury selection on May 24, 2007. On June 8, 2007, the jury convicted Stinski on all 13 counts that had been charged in the indictment and on lesser-included counts of felony murder. On June 12, 2007, the jury recommended a death sentence for each of the murders. The trial court imposed two death sentences for the malice murders and properly treated the felony murder convictions as mere surplusage. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a). The trial court also imposed the following terms of imprisonment, each to be consecutive to one another and to the two death sentences: twenty years each for the cruelty to children in the first degree, for the two counts of burglary, and for the two counts of arson; five years each for the five counts of entering an automobile; and fifteen years for the possession of a controlled substance with

sentence for each of the murders. See OCGA § 17-10-30 (b). For the reasons set forth below, we reverse the trial court's sentencing order insofar as it imposed two sentences for the one crime of arson and direct the trial court to vacate the second of those duplicative sentences, and we affirm all of Stinski's remaining convictions and sentences, including his death sentences for the murders.

1. The evidence at trial showed that Darryl Stinski and Dorian O'Kelley engaged in a crime spree that spanned April 10-12, 2002. On the night of April 10, two police officers observed two men dressed in black clothing in a convenience store. Later, the officers responded to two separate calls regarding the sounding of a burglar alarm at a nearby home and the officers returned to the store after responding to each call. Then, at approximately 5:00 a.m. on April 11, the officers noticed while leaving the store that "the sky was lit up." The officers discovered the victims' house fully engulfed in flames. As one of the officers moved the patrol vehicle to block traffic in preparation for the arrival of emergency vehicles, his headlights illuminated a wooded area where he observed the same two men that he and his partner had observed earlier in the convenience store. O'Kelley, as the neighbor living across the street from the burned house, gave an interview to a local television station. The officer saw the interview on television and identified O'Kelley as being one of the men he had seen in the convenience store and near the fire. The officer later identified both Stinski and O'Kelley in court.

Stinski and O'Kelley left items they had stolen with friends who lived nearby. The friends handed those items over to the police. Testimony showed that, before their arrest, O'Kelley had bragged about raping a girl and keeping one of her teeth as a memento and Stinski had laughed when he saw O'Kelley being interviewed on the news in front of the victims' house.

Stinski gave two videotaped interviews with investigators after his arrest, the second of which was suppressed on his motion. In the interview the jury heard, Stinski confessed to participating in the crime spree described below, which began with burglarizing a home and leaving when a motion detector in this first home set off an alarm. After their botched burglary of the first home, Stinski and O'Kelley turned off the electricity to the home of Susan Pittman and her 13-year-old daughter, Kimberly Pittman, and entered as both victims slept. O'Kelley took a walking cane and began beating Susan Pittman, while Stinski held a large flashlight. Stinski beat Susan

---

the intent to distribute. Stinski filed a motion for new trial on June 13, 2007, which he amended on March 6, 2008, and which the trial court denied on April 20, 2009. Stinski filed a notice of appeal on May 20, 2009, the appeal was docketed in this Court on July 8, 2009, and the case was orally argued on October 19, 2009.

Pittman with the flashlight and then left the room to subdue Kimberly Pittman, who had awakened to her mother's screams. O'Kelley then beat Susan Pittman with a lamp and kicked her. At some point, Susan Pittman was also stabbed three to four times in the chest and abdomen. Stinski took Kimberly Pittman upstairs so she would not continue to hear her mother's screams. Susan Pittman eventually died from her attack. Stinski and O'Kelley then brought Kimberly Pittman back downstairs, drank beverages, and discussed "tak[ing] care of" her. Stinksi took Kimberly Pittman back upstairs and bound and gagged her. As Stinski rummaged through the house downstairs, O'Kelley raped Kimberly Pittman. Stinski and O'Kelley then agreed that Stinski would begin beating Kimberly Pittman with a baseball bat when O'Kelley said a particular word. On cue, Stinski hit Kimberly Pittman in the head with the bat as she knelt on the floor, bloody from the rape and with her hands bound. O'Kelley then slit Kimberly Pittman's throat with a knife but she remained alive. Stinski went downstairs and came back upstairs when O'Kelley called him. Stinski then hit Kimberly Pittman in her knee with the bat as O'Kelley tried to suffocate her. O'Kelley then took another knife and stabbed her in the torso and legs. O'Kelley kicked her and threw objects at her head, but her groans indicated that she was still alive. Stinski and O'Kelley then set fires throughout the house and went to O'Kelley's house across the street to watch the fire. Kimberly Pittman died of smoke inhalation before the fire fully consumed the house. Later, in the early morning hours of April 12, Stinski and O'Kelley broke into numerous vehicles in the neighborhood.

We conclude upon our review of the record that the evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Stinski was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The jury convicted Stinski on two counts of arson in the first degree, one alleging that the structure burned was a dwelling house and one alleging that it was reasonably foreseeable that the fire might endanger human life. However, the evidence showed that only one continuous act of setting multiple fires in the same house constituted the act of arson. See OCGA § 16-7-60 (a) (1), (5). Therefore, the trial court is directed to vacate the sentence it imposed based on the second count of arson in the first degree. See *O'Kelley v. State*, 284 Ga. 758, 760-761 (1) (670 SE2d 388) (2008) (holding that the same remedy was required in the appeal of Stinski's co-defendant).

*Pretrial Issues*

2. Stinski argues that the trial court erred by denying his motions seeking to limit media publicity of his case. Because Stinski presented no clear and convincing proof that closure of his trial proceedings was necessary in addition to the change of venue actually granted by the trial court, this claim must fail. See *Rockdale Citizen Publishing Co. v. State of Ga.*, 266 Ga. 579 (468 SE2d 764) (1996).

3. Stinski argues that the trial court erred by denying his motion for disclosure of any possible grounds for recusal. The trial court did not err by noting its independent ethical duty to disclose any basis for recusal and otherwise denying Stinski's motion. See Georgia Code of Judicial Conduct, Canon 3 (E). See also *Jones County v. A Mining Group*, 285 Ga. 465, 465 (678 SE2d 474) (2009) (noting that the Georgia Code of Judicial Conduct imposes a greater duty for voluntary recusal than does Georgia statutory law).

4. The trial court denied Stinski's motion to order the State to disclose all of the evidence, diagrams, sketches, and photographs that it had shown to its prospective witnesses. Because Stinski has shown no reason compelling a different conclusion and because it appears Stinski's constitutional rights were adequately protected by his ability to conduct cross-examination, we find no error.

5. Stinski argues that the trial court erred by denying his motions seeking information related to the grand jury proceedings against him. The State complied with its relevant duties under the Criminal Procedure Discovery Act, and Stinski has failed to show that he was legally entitled to any of the other information he sought. See *Ruffin v. State*, 283 Ga. 87, 88 (5) (656 SE2d 140) (2008) ("Grand jury proceedings are confidential and thus appellant was not entitled to a transcript of those proceedings."); U.A.P. I (A) (noting that the Unified Appeal Procedure governs proceedings only "during and after trial"). Accordingly, we find no error.

6. Stinski has shown no sound basis in law for his argument that the trial court erred by refusing to order the State to disclose evidence supporting all pretrial statements made by the prosecution and by law enforcement officers. Accordingly, we find no error.

7. The trial court did not err by denying Stinski's motion to make the jurors' handwritten notes part of the record. *McMichen v. State*, 265 Ga. 598, 613 (35) (458 SE2d 833) (1995).

8. Contrary to Stinski's arguments, we conclude that the reference to "the Governor" in OCGA § 17-10-33, which governs the transportation of a death-sentenced prisoner to the site of his or her execution, does not purport to grant the Governor any unconstitutional power of commutation and does not deprive the State Board of

Pardons and Paroles of its constitutionally-granted power of commutation. See Ga. Const. of 1983, Art. IV, Sec. II, Par. II (granting the powers of executive clemency to the State Board of Pardons and Paroles). Instead, we conclude that the statute merely grants the Governor the authority to modify, in a manner that does not conflict with other laws governing executions, the statutorily-prescribed time for transporting the defendant. See *City of Macon v. Smith*, 244 Ga. 157, 158 (259 SE2d 90) (1979) (holding that "legislative enactments should be construed, where susceptible to more than one meaning, so as to be constitutional rather than being construed so as to be unconstitutional").

9. Stinski argues that the trial court erred by denying his motion to restrict the use of the word "murder" at trial. See *Laney v. State*, 271 Ga. 194, 196 (7) (515 SE2d 610) (1999) ("The trial court did not err in permitting the prosecutor to use the word 'murder' instead of 'homicide' "); *James v. State*, 270 Ga. 675, 676-677 (4) (513 SE2d 207) (1999) (addressing a motion for mistrial made in response to a witness' use of the word "murder"). Stinski has failed to cite to any part of the record showing that the word was ever used inappropriately, and, therefore, he has failed to show the harm that would be necessary for reversal. See *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006) ("In order to have reversible error, there must be harm as well as error.").

10. Stinski argues that the trial court erred by denying his motion in limine in which he sought to bar a litany of allegedly-improper arguments by the prosecution. See *Carruthers v. State*, 272 Ga. 306, 310 (2) (528 SE2d 217) (2000) (noting that an objection to a specific improper closing argument can be made through a motion in limine), overruled on other grounds by *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008). The only specific instance of allegedly improper argument Stinski cites is the prosecutor's juxtaposition of photographs of the victims while alive with photographs of their remains after the murders and arson. This argument was not improper. *McPherson v. State*, 274 Ga. 444, 450 (9), 453 (19) (553 SE2d 569) (2001) (holding that photographs of the victim in life and of the victim after the murder were admissible, and that the prosecutor may display photographs that have been admitted into evidence during closing arguments). Stinski has failed to cite to any other specific part of the record showing that the prosecutor made allegedly improper arguments, and, therefore, he has failed to show any harm. See *Inman*, 281 Ga. at 73 (5) ("In order to have reversible error, there must be harm as well as error.").

11. Stinski has failed to cite to any place in the record showing that there was misuse at trial of the words "guilty," "not guilty," and "innocent." Therefore, he has failed to show any harm resulting

from the trial court's denial of his motion in limine regarding those words. See *Kinsman v. State*, 259 Ga. 89, 90 (3) (376 SE2d 845) (1989) (holding that an isolated use of the phrase "guilt or innocence" did not mislead the jury regarding the State's burden of proof).

12. As we held on interim review, the trial court did not err by refusing to exclude the pre-autopsy photographs of the victims' bodies that were presented in Stinski's case. *Stinski*, 281 Ga. at 785-786 (3).

13. This Court has already rejected on interim review Stinski's contention that the trial court erred by refusing to quash his indictment because a person with arrest powers served on his grand jury. *Stinski*, 281 Ga. at 788 (5).

14. Statutory aggravating circumstances need not be included in indictments. *Jones v. State*, 282 Ga. 784, 790-791 (2) (653 SE2d 456) (2007). Stinski was given constitutionally-sufficient notice of what he would be required to defend against through the State's written notice of its intent to seek the death penalty. *Terrell v. State*, 276 Ga. 34, 40-42 (5) (572 SE2d 595) (2002).

15. The trial court did not abuse its discretion in denying Stinski's motion to sever the trial of the crimes he committed in the Pittman residence from the trial of the other crimes he committed nearby that same night as part of a single crime spree. See *Hubbard v. State*, 275 Ga. 610, 611-612 (2) (571 SE2d 351) (2002); *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975).

16. On interim review, this Court rejected Stinski's arguments that the trial court erred by refusing to suppress his custodial statement taken on April 12, 2002, and by refusing to suppress a red tote bag and its contents. *Stinski*, 281 Ga. at 783-785 (1), (2).

17. We have previously held that evidence offered in other death penalty cases which was admitted by stipulation in Stinski's case fails to prove that Georgia's method of lethal injection is unconstitutional. *O'Kelley*, 284 Ga. at 769-770 (4) (citing *Baze v. Rees*, 553 U. S. 35 (128 SC 1520, 170 LE2d 420) (2008)).

18. The fact that a statutorily-mandated proportionality review is performed by this Court rather than by a jury does not render that review unconstitutional, because all of the findings of fact necessary to set the maximum punishment are made by the jury. *Morrison v. State*, 276 Ga. 829, 835 (7) (583 SE2d 873) (2003). See OCGA § 17-10-35 (c) (3) (directing this Court to conduct proportionality reviews of death sentences).

19. Stinski argues that the Criminal Procedure Discovery Act is unconstitutional. See OCGA § 17-16-1 et seq. We rejected most of Stinski's arguments on interim review. *Stinski*, 281 Ga. at 786-788 (4). Stinski now makes additional arguments, which we also reject

for the following reasons:

(a) Stinski argues that the criminal discovery procedure violated his right to the effective assistance of trial counsel and his right not to incriminate himself. We have previously rejected these arguments. *Muhammad v. State*, 282 Ga. 247, 248-253 (2), (3) (647 SE2d 560) (2007).

(b) Stinski also asserts that the criminal discovery procedure interferes with trial counsel's ability to use mitigation specialists to assist trial counsel in preparing for the sentencing phase of death penalty trials. In support of that contention, Stinski argues that statements of witnesses discovered by mitigation specialists and reported on in writing to trial counsel would be discoverable by the State under OCGA § 17-16-4 (b) (3) (C), while statements of witnesses discovered by trial counsel directly would not be. OCGA § 17-16-1 (2) (C) provides that statements of witnesses referred to in the criminal discovery procedure do "not include notes or summaries made by counsel." We have held that work "done by [an investigator] under the attorney's instruction and supervision was as much a part of the attorney's work as if he had done it himself." *Smith v. Smith*, 223 Ga. 551, 556 (2) (a) (156 SE2d 916) (1967). Similarly, we hold that "notes and summaries" made by a mitigation specialist who is working at the direction of trial counsel in a death penalty case should be regarded as "notes or summaries made by counsel" within the meaning of the criminal discovery procedure. Accordingly, there is no merit to Stinski's argument that a death penalty defendant's ability to employ a mitigation specialist to assist in investigation is unduly hampered by the criminal discovery procedure.

20. The trial court granted Stinski's motion for a change of venue and determined that the jury would be selected from Bibb County. Stinski argues, however, that the trial court abused its discretion under OCGA § 17-7-150 (a) (3) by holding the trial in Chatham County, where local media coverage necessitated the jury's sequestration, rather than holding the trial in Bibb County, where the trial court could have allowed the jurors to go to their homes each night. See *Lewis v. State*, 279 Ga. 756, 762 (5) (620 SE2d 778) (2005) (holding that a trial court has discretion to grant or deny a defendant's request that the jury not be sequestered in a death penalty case). We find no abuse of discretion in the trial court's decision to move the Bibb County jurors to Chatham County and to sequester them. We also hold that Stinski had no legal right to demand that the jurors be instructed that they had been brought to Chatham County over Stinski's objection.

## Jury Selection Issues

21. Stinski has failed to show that financial compensation of all jurors at the level set by Georgia law resulted in the unconstitutional representation of any cognizable group or was unconstitutional in any other way. See OCGA § 15-12-7 (a) (2); *Ramirez v. State*, 276 Ga. 158, 159-162 (1), (2) (575 SE2d 462) (2003) (discussing the alleged under-representation of cognizable groups).

22. The trial court did not err by denying Stinski's request for more peremptory strikes than were provided for by Georgia law at the time of his trial. See OCGA § 15-12-165; *Frazier v. State*, 257 Ga. 690, 695 (10) (362 SE2d 351) (1987).

23. The trial court did not err by denying Stinski's motion to compel the prosecutor to disclose all notes or records he might possess regarding the prospective jurors. See *King v. State*, 273 Ga. 258, 263 (12) (c) (539 SE2d 783) (2000) (holding that such materials must be disclosed only if they are exculpatory within the meaning of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)); *Tyree v. State*, 262 Ga. 395, 397 (2) (418 SE2d 16) (1992) (noting that prosecutors have a duty to disclose specific, relevant facts known to them that have been misrepresented by prospective jurors).

24. The trial court did not err by denying Stinski's motion for a daily transcript of voir dire. See *Thomason v. State*, 268 Ga. 298, 312 (12) (486 SE2d 861) (1997); *Hightower v. State*, 259 Ga. 770, 772 (8) (386 SE2d 509) (1989) ("A defendant is not entitled to a daily transcript.").

25. Qualifying prospective jurors based on their willingness to consider imposing a death sentence is not unconstitutional. *Gissendaner v. State*, 272 Ga. 704, 716 (17) (532 SE2d 677) (2000); *McMichen*, 265 Ga. at 611 (28) (citing *Lockhart v. McCree*, 476 U. S. 162, 173 (106 SC 1758, 90 LE2d 137) (1986)).

26. The trial court did not err by asking jurors the question on death penalty views prescribed by OCGA § 15-12-164 (a) (4), allowing follow-up questions by both parties, and then excusing jurors in accordance with constitutional standards. *King*, 273 Ga. at 262 (8). In addition, Stinski lacks standing to challenge the constitutionality of OCGA § 15-12-164 (c), because no prospective jurors were excused based on that statute. Id.

27. The trial court did not abuse its discretion by denying Stinski's motion to have voir dire bifurcated by subject matter. See *Jones v. State*, 263 Ga. 904, 907 (9) (b) (440 SE2d 161) (1994) ("The trial court has a discretion to control voir dire.").

28. Stinski has failed to show that the trial court erred by stating that it would follow case law regarding the qualification of jurors based on their death penalty views but otherwise denying his motion

on that subject.

29. Our review of the record does not support Stinski's argument that the trial court improperly limited voir dire regarding mitigating circumstances. See *King*, 273 Ga. at 271 (26) (holding that a trial court does not err by refusing to require potential jurors to identify the specific mitigating circumstances they would give weight to).

30. We have held under Georgia statutory law that a death penalty defendant may voir dire prospective jurors on their willingness to impose a sentence of life with the possibility of parole but that "[e]xposure to the complexities of the future role of the Board of Pardons and Paroles . . . is not an appropriate matter for voir dire." *Zellmer v. State*, 272 Ga. 735, 736 (1) (534 SE2d 802) (2000). We disagree with Stinski's argument that constitutional law requires any modification of this holding.

31. Stinski's claim that application of OCGA §§ 15-12-1 and 15-12-60 in his case resulted in the unconstitutional under-representation of certain cognizable groups is not supported by the evidence of record and, therefore, must fail. See *Morrow v. State*, 272 Ga. 691, 692-693 (1) (532 SE2d 78) (2000).

32. Upon our review of the record, we reject Stinski's argument that the trial court abused its discretion in excusing potential jurors Neal, Stanley, and Walker for reasons of personal hardship. See *Sealey v. State*, 277 Ga. 617, 620 (8) (593 SE2d 335) (2004). We also reject Stinski's argument that the trial court abused its discretion by refusing to excuse potential juror Woodard based on Stinski's argument that the juror's potential hardship and other circumstances would likely distract her at trial. See *McClain v. State*, 267 Ga. 378, 381-382 (1) (c) (477 SE2d 814) (1996).

33. Upon our review of each of the jurors' voir dire responses, we reject Stinski's argument that the trial court abused its discretion in finding, based on the jurors' responses viewed as a whole, that potential jurors Curry, Collins, Fogg, and Danuser each held views on the death penalty that would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and their oaths in a death penalty trial and that potential jurors Watson, Kennedy, West, Center, Barrett, and Gurley did not hold such disqualifying views. See *Greene v. State*, 268 Ga. 47, 48-50 (485 SE2d 741) (1997). We also find no merit to Stinski's argument that the trial court failed to apply a consistent standard throughout voir dire on the question of jurors' death penalty views.

34. Excusing jurors for cause based on death penalty views that are derived from religion is not unconstitutional. *King*, 273 Ga. at 267 (20).

## Guilt/Innocence Phase Issues

35. The trial court gave the pattern jury charge directing that the indictment should not be considered as evidence, and it did not err by refusing to otherwise charge the jury on the grand jury process. *Shadron v. State*, 275 Ga. 767, 769-770 (3) (573 SE2d 73) (2002). See Suggested Pattern Jury Instructions, Criminal Cases (3d ed.), p. 8, § 1.10.20.

36. The trial court did not err by refusing to charge the jury at the beginning of the guilt/innocence phase regarding the procedures to be followed in the sentencing phase.

37. The State presented evidence in the guilt/innocence phase showing that the victims' dogs perished in the fire that was set by Stinski and his co-defendant, which utterly destroyed the victims' home. We agree with Stinski's argument that the trial court abused its discretion by refusing to exclude this evidence in the guilt/ innocence phase on the ground that its probative value in proving the charges in the indictment was outweighed by undue prejudice. Compare *Brooks v. State*, 281 Ga. 514, 516-517 (3) (640 SE2d 280) (2007). Nevertheless, in light of the overwhelming evidence of Stinski's guilt, including his own confession, we hold that it is highly probable this error did not contribute to the verdict in the guilt/innocence phase and, therefore, that it is not reversible error. See *McGee v. State*, 267 Ga. 560, 562-564 (2) (480 SE2d 577) (1997). As is discussed further below, the evidence about the dogs was properly considered by the jury in the sentencing phase.

38. Stinski argues that the trial court erred by denying his motion to exclude testimony recounting the out-of-court statements of his co-defendant, O'Kelley. O'Kelley's statements were made to friends during the concealment phase of the conspiracy between O'Kelley and Stinski. See OCGA § 24-3-5; *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976) (noting that statements made during the concealment phase of a conspiracy fall within Georgia's hearsay exception). Many of O'Kelley's statements were made in Stinski's presence, and none of them sought to deny O'Kelley's guilt.

The statements were not testimonial in nature; therefore, they were not inadmissible simply because they were not subjected to cross-examination. *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). However, under this Court's current case law,[2] the hearsay statements would be deemed admissible under

---

[2] Our current case law on this subject was based on constitutional grounds. See, e.g., *Copeland v. State*, 266 Ga. 664, 665 (2) (b) (469 SE2d 672) (1996). We note that these constitutional grounds have recently been undermined. See *Whorton v. Bockting*, 549 U. S. 406, 420 (III) (B) (127 SC 1173, 167 LE2d 1) (2007) ("Under *Crawford* . . . the Confrontation Clause

constitutional standards only if they bore sufficient indica of reliability, because the Georgia exception to the hearsay rule applicable here was not an exception recognized under the common law. *McKinney v. State*, 281 Ga. 92, 96, n. 3 (635 SE2d 153) (2006). Although, under our current case law, the trial court erred by applying a presumption of reliability, we conclude that its decision to admit the statements was not erroneous, because the statements were admissible under the analysis we have previously prescribed. This Court has adopted the following non-exhaustive list of factors to be considered in weighing the reliability of an out-of-court statement:

> (1) the absence of an express assertion about a past fact; (2) the declarant had personal knowledge of the identity and roles of the participants in the crime and cross-examination of the declarant would not have shown that the declarant was unlikely to know whether the defendant was involved in the crime; (3) the possibility that the declarant's statement was founded on faulty recollection was remote; and (4) the circumstances under which the declarant gave the statement suggest that the declarant did not misrepresent the defendant's involvement in the crime.

*Copeland v. State*, 266 Ga. 664, 665 (2) (b) (469 SE2d 672) (1996) (citing *Dutton v. Evans*, 400 U. S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970) (plurality opinion)). Although the first of these indicia clearly did not apply to O'Kelley's statements, we hold that the others did and that, on balance, the statements bore sufficient indicia of reliability to be admissible. See *Copeland*, 266 Ga. at 665-666 (2) (b).

Stinski's motion to exclude testimony regarding O'Kelley's out-of-court statements also requested that the trial court order witnesses at trial to specify clearly whether O'Kelley or Stinski made each of the statements. Although we regard this specific request as having been denied by the trial court's written order stating that the entire motion was denied, any error was harmless, because the trial court freely allowed Stinski to conduct cross-examination of the witnesses, including on the subject of any perceived lack of clarity in their testimony.

39. Pretermitting the trial court's basis for its ruling, we hold

---

has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *Davis v. Washington*, 547 U. S. 813, 821 (II) (126 SC 2266, 165 LE2d 224) (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). We need not decide whether or on what grounds our current case law might remain valid, however, because our current case law favors Stinski and because we find no reversible error in Stinski's case under that case law.

that the trial court did not err by refusing Stinski's request to admit only the portions of letters written by O'Kelley that cast O'Kelley in a bad light relative to the crimes and excluding other portions that described Stinski's role in the crimes as being more significant than Stinski had described in his custodial interview. See OCGA §§ 24-2-4, 24-3-38; *Boatman v. State*, 272 Ga. 139, 141-142 (4) (527 SE2d 560) (2000). We reject Stinski's argument that he should have been permitted to admit portions of the letters for the purportedly-limited purpose of showing O'Kelley's state of mind without waiving his objections to the State's introduction of the remainder of the letters.

40. The State provided the jury with a transcript of the video-taped confession that Stinski made on April 12, 2002. Stinski objected to allowing the jurors to use the transcript as an aid as they watched and listened to the videotape, claiming that it was improper that the transcript, which had been created initially by a court reporter, had been corrected by a detective. Because Stinski did not show the trial court any defects in the corrected transcript in order to rebut the detective's testimony that the corrections were accurate, the trial court did not abuse its discretion by instructing the jury on the limited use of transcripts as aids and then allowing the corrected transcript to be used. See *Palmer v. State*, 277 Ga. 124, 125-126 (4) (587 SE2d 1) (2003); *Murphy v. State*, 267 Ga. 100, 101 (5) (475 SE2d 590) (1996).

41. The trial court did not err in the guilt/innocence phase by excluding hearsay testimony recounting an alleged out-of-court statement by Stinski to a jail mate. The alleged out-of-court statement was partially self-serving in that it portrayed Stinski as having played a more limited role in the crimes than his custodial confession had portrayed. Contrary to Stinski's suggestion, such hearsay is not admissible by the declarant in his own defense simply because the State could have introduced it against him. See *Whitehead v. State*, 255 Ga. 526, 527-528 (5) (340 SE2d 885) (1986).

42. Stinski argues that the trial court erred in the guilt/innocence phase by refusing to give his requested charge on parties to a crime and accomplice liability. Specifically, Stinski argues that the trial court preconditioned the giving of his requested charge on his agreeing to the inclusion of additional language addressing the manner of proving common intent, which Stinski argued would have been repetitive of an earlier charge on intent. Pretermitting whether the trial court's precondition was appropriate, we find no error, because the relevant pattern charges adequately stated the law. See *King*, 273 Ga. at 277 (40) (holding that it is not error "to refuse to charge the jury in the exact language requested" when the charges actually given are adequate).

43. Similarly, the trial court did not err in the guilt/innocence

phase by refusing to charge the jury regarding the voluntariness of Stinski's custodial statement in the exact language Stinski requested, because the pattern charge given adequately stated the law. *King*, 273 Ga. at 277 (40).

44. The trial court did not violate Stinski's constitutional rights by applying OCGA § 17-8-71 as amended in 2005 to the procedural issue of whether he would be entitled to make the last closing argument to the jury in the guilt/innocence phase. *Chandler v. State*, 281 Ga. 712, 717-718 (4) (642 SE2d 646) (2007).

45. The trial court did not err by overruling Stinski's objection and motion for a mistrial based on the prosecutor's urging the jury during closing argument in the guilt/innocence phase to consider Stinski's demeanor in the courtroom. See *Hardnett v. State*, 285 Ga. 470, 474 (5) (678 SE2d 323) (2009); *Christenson v. State*, 261 Ga. 80, 89 (7) (b) (402 SE2d 41) (1991).

46. Stinski argues that the trial court erred in the guilt/innocence phase by charging the jury twice that it was the trial court's duty to instruct the jury on the law and the jury's duty to apply the facts to the law. He also argues that the trial court erred by charging the jury on the elements of burglary and arson during the charges on those crimes and then charging the jury on those elements a second time during the charges on felony murder. Reversal is not justified where, as here, the repeated charge "was a correct principle of law and was not so unduly emphasized as to unfairly prejudice the minds of the jury." *Clark v. State*, 283 Ga. 234, 236 (2) (a) (657 SE2d 872) (2008).

47. The trial court charged the jury in the guilt/innocence phase regarding statements by defendants to private persons. We agree that the trial court erred by not adjusting the charge to omit its reference to the situation where such a statement is made while the defendant is in custody, because there was no evidence in Stinski's case to show that he had made any such statements while in custody. However, we conclude that it is highly probable that the charge, although not properly adjusted to the evidence actually presented at trial, did not contribute to the jury's guilt/innocence phase or sentencing phase verdicts because it simply provided the law governing the admissibility of certain types of statements without implying that any such statements existed. Compare *Daniel v. State*, 260 Ga. 555, 556-557 (5) (397 SE2d 286) (1990) (finding harmful error where a charge that was not adjusted to the evidence "implied there were available inculpatory witnesses that the state had not produced"). We disagree with Stinski's further contention that the charge as given constituted an expression of opinion on the evidence by the trial court in violation of OCGA § 17-8-57. See also *Patel v. State*, 282 Ga. 412, 415 (2), n. 5 (651 SE2d 55) (2007) ("We recognize

that in those instances in which a technical violation of OCGA § 17-8-57 occurs in the giving of a jury charge, when the charge does not otherwise assume certain things as facts and intimate to the jury what the judge believes the evidence to be, the giving of additional or curative instructions may suffice to correct the error.'').

Likewise, we hold that the trial court's unnecessary charge on affirmative defenses did not constitute an expression of any opinion on the evidence by the trial court and that it is highly probable that the charge, which was not warranted by the evidence, did not contribute to the guilt/innocence or sentencing phase verdicts.

48. The trial court charged the jury in the guilt/innocence phase as follows: ''You are only concerned with the guilt or innocence of the Defendant. You are not to concern yourself with punishment at this time.'' This charge did not constitute a comment on the evidence by the trial court and was not improper. Instead, the charge properly directed the jurors to focus their guilt/innocence phase deliberations solely on the question of Stinski's possible guilt rather than possibly being distracted by premature concerns regarding sentencing. See *Roberts v. State*, 276 Ga. 258, 260 (4) (577 SE2d 580) (2003) (holding a similar charge to have been proper in a case where sentencing by the trial judge was to follow a possible guilty verdict).

### Sentencing Phase Issues

49. The trial court did not err by refusing to allow Stinski to present evidence and arguments about the likely date of his parole eligibility if he were sentenced to life with the possibility of parole for the murders. *Lance v. State*, 275 Ga. 11, 25 (34) (560 SE2d 663) (2002). Such evidence and argument were generally not permitted by this Court prior to the addition of life without parole as a sentencing option. See *Burgess v. State*, 264 Ga. 777, 788-789 (33) (450 SE2d 680) (1994) (distinguishing *Simmons v. South Carolina*, 512 U. S. 154 (114 SC 2187, 129 LE2d 133) (1994) (holding that, where the prosecution argues future dangerousness, a defendant who will *never* be eligible for parole if sentenced to imprisonment for life rather than to death is entitled to demand that the jury be informed of that fact)). See also Ga. L. 1993, p. 1654 et seq. (providing for life without parole as an available sentencing option for certain crimes committed after the effective date of the act). The addition of life without parole as an available sentencing option makes such evidence and argument even less important, because a jury concerned about the defendant's future dangerousness if he or she were ever paroled need not resort to a death sentence but, instead, may foreclose the possibility of parole by imposing a sentence of life without parole. See OCGA § 17-10-31 (b) (1) (authorizing, effective April 29, 2009,

arguments and jury charges on life without parole that are identical to those that were originally authorized under OCGA § 17-10-31.1 (d) (1) when life without parole first became an available sentencing option).

50. Stinski was not entitled in the sentencing phase to make an unsworn statement or to testify subject only to limited cross-examination. *Jenkins v. State*, 269 Ga. 282, 294 (22) (498 SE2d 502) (1998). Compare OCGA § 17-10-2 (a) (2) (providing an opportunity for a death penalty defendant to make arguments to the jury "regarding the punishment to be imposed" through counsel, if represented by counsel, or pro se, if not).

51. Stinski correctly argues that OCGA § 17-10-30 (b) (2) sets forth only one statutory aggravating circumstance and, therefore, that the trial court erred by using a verdict form that suggested otherwise. *King*, 273 Ga. at 276-277 (37) (d). However, as we have held previously, the error

> was harmless because the death penalty would still have been authorized if the [several] overlapping findings had been merged and because the jury was not instructed to weigh the number of statutory aggravating circumstances but, instead, was properly charged that it could impose a sentence less than death for any or no reason.

Id. at 276 (37) (d).

52. Stinski correctly argues that OCGA § 17-10-30 (b) (7) sets forth only one statutory aggravating circumstance. See *Carruthers*, 272 Ga. at 311 (3) (b), overruled on other grounds by *Vergara*, 283 Ga. at 177 (1). However, we conclude that the verdict form in this case did not suggest otherwise.

53. We have previously rejected the claim that OCGA § 17-10-30 (b) (2) fails to properly narrow the class of persons eligible for the death penalty because it authorizes the death penalty for murders committed during burglaries. *King*, 273 Ga. at 276 (37) (a).

54. The OCGA § 17-10-30 (b) (7) statutory aggravating circumstance was not used as an unlawful "catchall" justification for the death penalty in Stinski's case, and the trial court properly gave the instruction regarding that statutory aggravating circumstance recommended by this Court. See *Lance*, 275 Ga. at 23-24 (26) (citing *Godfrey v. Georgia*, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980)).

55. Stinski argues that the trial court erred by refusing to exclude portions of the victim impact testimony presented at trial. Most of the testimony Stinski complains about was proper testimony that, while expressive of the painful loss to individuals and the community, was not unduly inflammatory. See OCGA § 17-10-1.2

(authorizing victim impact testimony); *Turner v. State*, 268 Ga. 213, 214-215 (2) (a) (486 SE2d 839) (1997) (recommending a procedure for pretrial review of victim impact statements).

We do find that some of the victim impact testimony admitted over Stinski's objection was improper. Although, in *Payne v. Tennessee*, 501 U. S. 808 (111 SC 2597, 115 LE2d 720) (1991), the Supreme Court of the United States overruled its previous decision in *Booth v. Maryland*, 482 U. S. 496 (107 SC 2529, 96 LE2d 440) (1987), we have noted that *"Payne* left undisturbed *Booth's* holding that the state could not use information or testimony concerning 'a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence.' " *Sermons v. State*, 262 Ga. 286, 287 (1) (417 SE2d 144) (1992) (quoting *Payne*, 501 U. S. at 830, n. 2). We find that this limit to victim impact testimony was violated in several minor instances[3] at Stinski's trial. However, even assuming as we do that these limited improprieties amounted to constitutional violations, they do not require reversal of Stinski's death sentence because they were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18, 24 (III) (87 SC 824, 17 LE2d 705) (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

56. The trial court did not err by excluding as irrelevant Stinski's evidence suggesting that the victim had killed her husband during a domestic abuse incident. See *Barnes v. State*, 269 Ga. 345, 357-361 (27) (496 SE2d 674) (1998) (holding that Georgia courts should take a permissive approach to admitting mitigating evidence that is relevant to the defendant's character, background, or blameworthiness but noting that "[t]he victim's bad character is not admissible in the sentencing phase").

57. Stinski contends that one of the jurors stood and looked at him while the juror was being polled on his vote for a verdict of guilt, and Stinski argues that the trial court erred by refusing to conduct additional voir dire of the juror in response. The juror's pretrial voir dire showed him to be a qualified juror who was willing to consider mitigating evidence and was willing to consider all three sentencing options. Although Stinski was entitled to jurors who would consider in the sentencing phase all of the evidence from both phases of the trial, he was not entitled to jurors who would be unmoved by the evidence that had been proven in the guilt/innocence phase. Under

---

[3] For example, witnesses described the crimes as "this horrible act" and described the victims' deaths as "brutal," which amounted to characterizations of the crimes, regardless of how accurate those characterizations obviously were.

these circumstances, we find no abuse of discretion in the trial court's decision to deny Stinski's request to conduct further voir dire in the middle of the trial. See *Reynolds v. State*, 271 Ga. 174, 175 (2) (517 SE2d 51) (1999) (noting the interplay between the statutes governing pretrial voir dire and the authority of trial courts to replace jurors with alternates); *Washington v. State*, 253 Ga. 173, 173-174 (2) (318 SE2d 55) (1984) (whether to conduct mid-trial voir dire in response to newly-obtained information about a juror is a matter within the discretion of the trial court).

58. Stinski argues that the trial court erred by refusing to impose sentences for Stinski's non-murder convictions prior to the sentencing phase. Delaying sentencing allowed the trial court to properly consider the jury's sentencing verdicts in determining the appropriate punishments for the non-murder convictions. Furthermore, the only purpose to be served by accelerating the timing of the trial court's sentencing on the non-murder counts would have been to allow Stinski to present those sentences as evidence and to make arguments about them, which our discussion in Division 49 shows to be improper. Accordingly, we find no error.

59. The jury returned guilty verdicts on two counts of malice murder, on the lesser included counts of felony murder predicated on burglary and arson, and on separate counts of burglary and arson. Because the felonies of burglary and arson were not included offenses within the malice murder counts, the trial court properly vacated only the felony murder convictions and then imposed sentences on the malice murder, burglary, and arson[4] convictions. See *Davis v. State*, 281 Ga. 871, 873 (2) (644 SE2d 113) (2007); *Drinkard v. State*, 281 Ga. 211 (636 SE2d 530) (2006) (adopting the "required evidence" test for determining whether convictions should be merged).

60. A childhood friend of Stinski testified on his behalf during the sentencing phase. The trial court refused to allow Stinski to introduce testimony showing that the friend had acted compassionately toward a rape victim while in high school. Although the permissible scope of mitigating evidence concerning the defendant's background and character is broad, we hold that the trial court properly excluded the testimony at issue as being too remote from the central issue in the sentencing phase, which was Stinski's *own* background and character. See *Barnes*, 269 Ga. at 357-361 (27).

61. Above, we held that the trial court did not err in the guilt/innocence phase by refusing to admit a hearsay account of a

---

[4] See Division 1 where we note the trial court's error in imposing two sentences for the one crime of arson.

statement Stinski allegedly made to a jail mate in which Stinski described the crime in a manner that was partially self-serving. In the sentencing phase, Stinski again sought to introduce the hearsay account, arguing that the rules of evidence were relaxed in the sentencing phase. See *Gissendaner*, 272 Ga. at 714-715 (12) (holding that the rules of evidence are not suspended in the sentencing phase but that they may, under proper circumstances, yield to the need to present reliable mitigating evidence). The trial court agreed to allow Stinski to introduce hearsay testimony about his alleged out-of-court statement without requiring him to take the witness stand. However, the trial court also ruled that, if Stinski chose to present the hearsay testimony, the State would be allowed to impeach Stinski's alleged out-of-court statement with Stinski's second videotaped confession, which previously had been suppressed on Sixth Amendment grounds[5] and which was more inculpatory than the first videotaped confession that was already in evidence. Stinski argues that the trial court's ruling improperly compelled his choice not to present hearsay testimony about his alleged out-of-court statement.

A hearsay declarant's out-of-court statement that is presented to a jury may be impeached at trial in the same manner that in-court testimony may be impeached. *Smith v. State*, 270 Ga. 240, 244-245 (5) (510 SE2d 1) (1998), overruled on other grounds by *O'Kelley*, 284 Ga. at 768 (3). As the trial court properly determined, a voluntary statement by a defendant that was obtained through a violation of the Sixth Amendment right to counsel during certain pretrial interrogations may nevertheless be used to impeach the defendant's trial testimony. *Kansas v. Ventris*, __ U. S. __ (129 SC 1841, 173 LE2d 801) (2009). Accordingly, the trial court properly cautioned Stinski that his alleged out-of-court statement, if he chose to present hearsay testimony recounting it at trial, could be impeached by the State by use of his previously-suppressed videotaped statement, which Stinski did not claim to have been involuntary. Because that ruling was proper, the trial court did not err by refusing to restrict

---

[5] The trial court suppressed this second videotaped confession on the basis of this Court's decision in *O'Kelley v. State*, 278 Ga. 564, 565-568 (2) (604 SE2d 509) (2004), in which we applied the decision of the Supreme Court of the United States in *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986). We note that *Jackson* has recently been overruled by *Montejo v. Louisiana*, __ U. S. __ (129 SC 2079, 173 LE2d 955) (2009), at least insofar as *Jackson* held that officers may never initiate an interrogation of a defendant after the Sixth Amendment right to counsel has attached. Accordingly, we disapprove that portion of our decision in *O'Kelley* in which we concluded, based on *Jackson*, that "the Sixth Amendment right to counsel, once attached, cannot be waived by the defendant during questioning that is initiated by interrogators." *O'Kelley*, 278 Ga. at 568 (2). Because the law prior to the overruling of *Jackson* favors Stinski and because we find no reversible error under that old law, our analysis above proceeds as though the suppression of Stinski's second videotaped confession on Sixth Amendment grounds was proper.

the State's own evidence and argument about Stinski's lack of remorse as compensation for that ruling. Likewise, the trial court's proper ruling was not rendered improper simply because it later led to Stinski's strategic decision not to use hearsay accounts of the alleged statements to the jail mate to attempt to show that Stinski had made honest reports during his psychological care.

62. During her testimony, it became apparent that a psychologist who testified on Stinski's behalf in the sentencing phase was basing her expert testimony in part on additional interviews that she had conducted since Stinski had served the State with discovery. See OCGA § 17-16-1 et seq. See also *Stinski*, 281 Ga. at 786 (4) (a) (holding that Stinski's election to participate in the criminal discovery procedure was binding on him, despite the General Assembly's subsequent amendment of that procedure). The trial court did not err by ordering Stinski's psychologist to provide the State with a copy of the interview notes upon which she was relying as "the basis for [her] expert opinions" when it became apparent that Stinski had not otherwise provided an updated "summary" of the basis for those opinions. OCGA § 17-16-4 (b) (3) (B).

63. As we have previously held, a trial court does not err by giving the pattern jury charges that relate to the nature and role of mitigating evidence, the lack of a unanimity requirement in considering mitigating evidence, the fact that no particular burden of proof rests on the defendant to show mitigating circumstances, and the fact that jurors may vote to impose a sentence less than death for any reason or no reason at all. See *Rhode v. State*, 274 Ga. 377, 384 (15) (552 SE2d 855) (2001). We have also previously held that a trial court is "not required to instruct the jury on the consequences of a deadlock or to give the jury that option as a possible verdict." *Heidler v. State*, 273 Ga. 54, 65 (20) (537 SE2d 44) (2000). See *Jones v. United States*, 527 U. S. 373, 381 (II) (A) (119 SC 2090, 144 LE2d 370) (1999) (noting that "the Eighth Amendment does not require that the jury be instructed as to the consequences of their failure to agree" on sentencing in a death penalty case). Finally, other than the burden of the State to prove at least one statutory aggravating circumstance beyond a reasonable doubt, Georgia law provides for no presumption in favor of any particular sentencing option. See *Jenkins*, 269 Ga. at 296 (26). Accordingly, we find no merit to Stinski's challenges to jury charges given in the sentencing phase of his case.

64. During his closing arguments in the sentencing phase, the prosecutor described a video game that Stinski had been playing on the night of the murders. A witness at trial had described the game as involving "graphic violence" and fighting against the devil and demons. We conclude that the prosecutor's argument went slightly beyond the trial testimony by describing the video game as involving

the use of "bludgeoning objects to kill somebody" and that the trial court erred by failing to rebuke counsel and to instruct the jury to disregard the unauthorized argument, as was required by OCGA § 17-8-75. However, this error was not reversible error, because it is highly probable that the prosecutor's minor misstatement of the evidence, particularly in light of the trial court's subsequent statement to the jury that it should determine what evidence was actually presented, did not contribute to the sentencing verdict. *Arrington v. State*, 286 Ga. 335, 345-346 (16) (a) (687 SE2d 438) (2009).

65. It was not improper for the prosecutor to state during closing argument in the sentencing phase that Stinski caused two dogs to be burned alive in the victims' home. "It is well-settled that in a sentencing trial the State may present evidence of a defendant's bad character, including previous convictions and non-adjudicated offenses." *Lewis*, 279 Ga. at 758-759 (2). Accordingly, the trial court did not err by modifying an order it had previously entered so as to allow the argument.

66. As we discussed in Division 63, the trial court properly refused Stinski's request to charge the jury on the consequences if the jury was unable to reach a unanimous sentencing verdict. Defendants are permitted in closing arguments to refer to the law that will be charged by the trial court; however, a defendant may not attempt through his or her closing argument to inform the jury of legal principles that will not be charged by the trial court. See *Conklin v. State*, 254 Ga. 558, 569-571 (331 SE2d 532) (1985). Accordingly, the trial court did not err by sustaining the State's objections when Stinski repeatedly attempted to inform the jurors of the consequences of a failure to agree unanimously on their sentencing verdict.

### Sentence Review

67. Upon our review of the record and of Stinski's arguments, we conclude that the sentences of death in Stinski's case were not imposed under the influence of passion, prejudice, or any other arbitrary factor. See OCGA § 17-10-35 (c) (1).

68. Viewed in the light most favorable to the verdict, we find that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt the existence of the statutory aggravating circumstances found in this case. *Ring v. Arizona*, 536 U. S. 584 (122 SC 2428, 153 LE2d 556) (2002); *Jackson*, 443 U. S. 307; OCGA § 17-10-35 (c) (2).

69. Considering both the crimes and the defendant, we conclude that the death sentences in Stinski's case are not disproportionate

punishment within the meaning of Georgia law. See OCGA §
17-10-35 (c) (3); *Gissendaner*, 272 Ga. at 716-717 (19) (a) (stating
that this Court's statutorily-mandated proportionality review con-
cerns whether a particular death penalty "is excessive per se" or is
"substantially out of line" for the type of crime involved). The cases
appearing in the Appendix support this conclusion in that each
shows a jury's willingness to impose a death sentence in a case
involving multiple murders, whether committed in one or more
transactions. See OCGA § 17-10-35 (e).

*Judgments of conviction affirmed in part and reversed in part
with direction and death sentences affirmed. All the Justices concur.*

APPENDIX.

*O'Kelley v. State*, 284 Ga. 758 (670 SE2d 388) (2008) (affirming
death sentences for Stinski's co-defendant); *Rivera v. State*, 282 Ga.
355 (647 SE2d 70) (2007); *Williams v. State*, 281 Ga. 87 (635 SE2d
146) (2006); *Lewis v. State*, 279 Ga. 756 (620 SE2d 778) (2005); *Riley
v. State*, 278 Ga. 677 (604 SE2d 488) (2004); *Franks v. State*, 278 Ga.
246 (599 SE2d 134) (2004); *Sealey v. State*, 277 Ga. 617 (593 SE2d
335) (2004); *Arevalo v. State*, 275 Ga. 392 (567 SE2d 303) (2002);
*Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002), disapproved on
unrelated grounds by *Patel v. State*, 282 Ga. 412, 413 (2), n. 2 (651
SE2d 55) (2007); *Lance v. State*, 275 Ga. 11 (560 SE2d 663) (2002);
*Lucas v. State*, 274 Ga. 640 (555 SE2d 440) (2001); *Rhode v. State*,
274 Ga. 377 (552 SE2d 855) (2001); *Colwell v. State*, 273 Ga. 634 (544
SE2d 120) (2001); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55)
(2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v.
State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829
(524 SE2d 490) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657)
(1999); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997);
*Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v.
State*, 265 Ga. 598 (458 SE2d 833) (1995); *Ferrell v. State*, 261 Ga.
115 (401 SE2d 741) (1991).

DECIDED MARCH 1, 2010 —
RECONSIDERATION DENIED MARCH 29, 2010.

*Jackson & Schiavone, Michael G. Schiavone, Steven L. Sparger*,
for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell,
Assistant District Attorney, Thurbert E. Baker, Attorney General,*

*Richard Tangum, Assistant Attorney General*, for appellee.