**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2017**

# In the Court of Appeals of Georgia

A17A1258. THE STATE v. PEABODY.

MILLER, Presiding Judge.

Former Lieutenant Daniel Peabody was indicted on two counts of aggravated cruelty to animals (OCGA § 16-12-4 (d)), and one count of making a false statement (OCGA § 16-10-20), in connection with the hot-car death of his K-9 dog, Inka. Peabody moved to quash the indictment for the animal cruelty charges, on the grounds that the State violated OCGA § 17-7-52 by failing to provide him with a copy of the proposed bill of indictment, and more importantly, notice, before presenting the case to the grand jury. The trial court granted Peabody's motion, and the State now appeals, contending that OCGA § 17-7-52 is inapplicable because Peabody was not acting in the performance of his official job duties when the alleged crimes occurred. This Court finds that Peabody was in fact acting within the scope

of his official duties and he was therefore entitled to the protections afforded by OCGA § 17-7-52, including notice. Accordingly, we affirm the trial court's grant of the motion to quash the indictment.

"We review the trial court's interpretations of law and application of the law to the facts de novo and its findings of fact for clear error."[1]

So viewed, Peabody was a POST-certified peace officer, K-9 handler, and the owner of Inka. At the time of this incident, he was employed by the Cherokee County School District Police Department and had been Inka's K-9 handler for almost four years. Although Peabody's job customarily required him to perform his duties while inside school district buildings or facilities, he was also authorized to work with Inka elsewhere.

In accordance with the Cherokee County School Police Department's K-9 Policy and Procedures in effect at the time, Peabody was responsible for Inka's daily care, and his duties included providing her with food, water, shelter, and exercise. Peabody was also responsible for getting Inka into county-issued or personal

---

[1] *Yancey v. State*, No. A17A0264, — Ga. App. —,— (802 SE2d 702), 2017 WL 2609113, at *1 (June 16, 2017).

vehicles, transporting her, and then removing her from those vehicles. Peabody housed Inka at his residence, and he was compensated accordingly.

On the afternoon of June 10, 2016, Peabody left work in his county vehicle, with Inka in the back seat. On the way home, Peabody received a text message from his wife asking him to let out a puppy that she was boarding at their home. When Peabody arrived at his house, he parked in the driveway, turned the car engine off, and went inside the house to attend to the puppy. Peabody left Inka in the county vehicle with the doors shut and the windows closed, which ultimately resulted in Inka's death.

After learning that the State intended to present its case to the grand jury, Peabody timely notified the State that he wanted to testify before the grand jury pursuant to OCGA § 17-7-52, the statute which governs indictment procedures when a peace officer is charged with "a crime which is alleged to have occurred while he or she was in the performance of his or her duties." OCGA § 17-7-52 (a). When the statute is applicable, an officer is entitled to at least 20-days notice prior to the presentment of a proposed indictment to a grand jury. OCGA § 17-7-52 (a).

In response to Peabody's notice, the State claimed that the statute was inapplicable because the crimes did not occur while Peabody was in the performance

3

of his official duties. Consequently, the State did not send Peabody a copy of the proposed indictment before presenting its case to the grand jury in September 2016. After the grand jury indicted Peabody, the superior court granted Peabody's motion to quash the indictment, finding that the alleged acts did occur while Peabody was in the performance of his official duties as a police officer. This Court then granted the State's request for interlocutory review.

1. On appeal, the State posits that because Peabody left Inka in the vehicle to attend to personal tasks, he "stepped aside" from his police-related duties and was therefore not entitled to the protections afforded by OCGA § 17-7-52. We disagree.

OCGA § 17-7-52 (2016)[2] provides:

Before a bill of indictment or special presentment against a present or former peace officer charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties is presented to a grand jury, the officer *shall* be given a copy of the proposed bill of indictment or special presentment and notified in writing of the contemplated action by the prosecuting attorney. Such

_____

[2] OCGA § 17-7-52 was amended on July 1, 2016. See Ga. L. 2016, p. 186, § 8/HB 941. Although Peabody's alleged crimes occurred prior to the statute's amendments, his case was not before the grand jury until after the amendment became effective. Therefore, the amended version applies to our analysis. The previous version of OCGA § 17-7-52 provided for only 15-days notice. OCGA § 17-7-52 (2015) and OCGA § 45-11-4 (f) (2015).

4

notice and a copy of the proposed bill of indictment or special presentment *shall* be provided to such officer *not less than 20 days prior* to the date upon which a grand jury will begin hearing evidence.

(Emphases supplied.) OCGA § 17-7-52 (a).

These statutory protections, however,

have been found not to apply to situations where officers have stepped aside from the performance of their official duties in order to commit crimes. For instance, we have held that officers charged with committing burglary, armed robbery and aggravated assault while on duty are not entitled to these rights inasmuch as the performance of their official duties does not include the commission of such crimes. Likewise, this court has held that the performance of official duties does not include rape.

*Yancey*, supra, — Ga. App. at — (1), 2017 WL 2609113, at *3 (citing *State v. Galloway*, 270 Ga. App. 184, 185 (606 SE2d 273) (2004)).

Given that the statute provides for notice only where the crime alleged occurred in the officer's performance of his or her official duties, the question before us is whether Peabody was acting in the performance of those duties at the time that he left Inka in the car. We conclude that he was.

The way to determine whether OCGA § 17-7-52 applies to a peace officer is to specifically examine the "crime which is alleged to have occurred while he or she was in the performance of his or her duties." OCGA § 17-7-52 (a). As charged in the proposed bill of indictment, the crime was leaving Inka in a car under conditions whereby there was inadequate ventilation for her to survive. The fact that Peabody left Inka in the car so that he could attend to a personal matter is not the determinative factor in this analysis; Peabody's impetus for his conduct is of no import in this case. Rather, the operative inquiry is whether the specific conduct that predicated the criminal charges was within the scope of Peabody's official duties. OCGA § 17-7-52 (a).

At the motion hearing, Peabody testified that he was responsible for Inka's daily care, which encompassed caring for her at his residence and housing her. Further, pursuant to the Cherokee County School Department's K-9 Policy and Procedures, and as conceded by the State, Peabody's duties as Inka's K-9 handler specifically included getting her into county-owned or personal vehicles, transporting her, and then removing her from those vehicles. Insofar as Peabody was accused of leaving Inka in a vehicle in an illegal manner, thereby causing her death, the offenses at issue stem directly from his official duties as a K-9 handler. Whether Peabody's act

6

is viewed as caring for Inka in an unlawful manner, or transporting her under circumstances which proved unlawful, Peabody was still in the performance of his duties.[3]

Notably, this conclusion comports with previous decisions of both this Court and the Supreme Court of Georgia. In cases where either Court has decided that a crime occurred while an officer was performing his or her official duties, the officer was engaged in conduct prescribed by his or her position, but purportedly doing so in a manner contrary to the law. See *State v. Roulain*, 159 Ga. App. 233, 234 (2) (283 SE2d 89) (1981); *Wiggins v. State*, 280 Ga. 268, 270 (1) (626 SE2d 118) (2006); *State v. Lockett*, 259 Ga. App. 179, 181 (576 SE2d 582) (2003).

In fact, the issue in this appeal is akin to that in *Roulain*, supra, 159 Ga. App. at 234 (2), in which the defendants "confined a named prisoner under conditions

---

[3] We also reject the State's suggestion that OCGA § 17-7-52 is inapplicable because it only addresses cases in which the officer was in the "performance" of official duties, and this case involves the crime of "non-performance." It is clear from the indictment that Peabody was accused of performing his duties unlawfully. In count one, Peabody was charged with "maliciously caus[ing] [Inka's] death . . . by leaving said dog in a car that was turned off" and in which "all the windows were closed." Likewise, in count two, Peabody was charged with "intentionally exercis[ing] custody and control of [Inka]," and "maliciously fail[ing] to provide [her] adequate ventilation" by "leav[ing] . . . Inka in a car that was turned off" and in which "all the windows were closed."

7

which caused his death by heat prostration." Id. This Court concluded that the defendants were entitled to appear before the grand jury and give a sworn statement because they had been "accused of performing a duty in a criminally negligent manner." Id. Similarly, in *Wiggins*, supra, 280 Ga. at 270 (1), the Supreme Court of Georgia acknowledged that an officer's charge for false writing and statements arose in the performance of his official duties, as it pertained to the officer's completion of his activity sheet. Id. at 269 (1).[4]

Accordingly, as set forth in OCGA § 17-7-52 (a), Peabody was entitled to timely notice of the proceeding and a copy of the proposed indictment before the State presented its case to the grand jury. Since the State failed to comply with these statutory mandates, the trial court properly granted Peabody's motion to quash the indictment.

---

[4] The State relies on the Georgia Supreme Court's ruling in *Wiggins*, supra, 280 Ga. at 270, that the statute did not apply to the officer's charge for cruelty to children. However, this comparison is unavailing because that charge arose from the officer threatening a minor with incarceration if she refused to cooperate with him, and then having sex with her in a park. Id. at 269. The State's attempt to analogize this case to *Galloway*, supra, 270 Ga. App. at 185 must also fail. There, the officer "took a woman into custody, threatened to charge her with a crime and then forced her to have sexual intercourse with him in exchange for him not pressing charges." Id. In *Wiggins* and *Galloway*, the very nature of the conduct itself was far outside the scope of the officer's official duties and the officer was therefore not entitled to notice under OCGA § 17-7-52.

2. The State next argues that the trial court exceeded its authority by implying that any future presentment to the grand jury alleging that Peabody committed animal cruelty in the first degree would be governed by an inapplicable statutory provision. Although the trial court correctly cited to the 2016 version of OCGA § 17-7-52 in its discussion of notice, the trial court later commented about rights afforded under the 2015 version. Specifically, the trial court order stated, "[t]he rights afforded an officer by OCGA § 45-14-4 include the right to be present with counsel during the state's presentation of evidence to the grand jury and, at the conclusion of the state's evidence, the right to make a statement without being subject to direct or cross-examination."

Given our previous discussion in Division 1, the State's observation is correct. This language, however, as applied to any potential future indictment, is merely advisory and thus does not provide a basis for reversal. Should the State elect to re-indict Peabody, the provisions of the 2016 version of OCGA § 17-7-52 would clearly apply.

For the preceding reasons, the trial court's order granting Peabody's motion to quash his indictment is affirmed.

*Judgment affirmed. Doyle and Reese, JJ., concur.*