**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 10, 2019**

# In the Court of Appeals of Georgia

A19A1464. THE STATE v. O'NEAL.                          DO-051 C

DOYLE, Presiding Judge.

The State appeals from the grant of Wesley O'Neal's motion to quash an indictment accusing him of violating his public oath, committing simple battery, and making a false statement in connection with his employment as a corrections officer. The trial court granted the motion to quash on the ground that the State failed to follow the notice and other procedural requirements in OCGA § 17-7-52, which is applicable to certain indictments against peace officers. On appeal, the State contends that the trial court erred by concluding that OCGA § 17-7-52 applied because the record failed to show that O'Neal committed the allegedly criminal conduct while in the performance of his duties. For the reasons that follow, we affirm in part and reverse in part.

"We review the trial court's interpretations of law and application of the law to the facts de novo and its findings of fact for clear error."[1]

The relevant record is sparse. It contains the indictment, O'Neal's motion to quash the indictment, the parties' briefs, and the trial court's order; by consent of the parties, there was no hearing nor any evidence proffered.[2] The indictment shows that in June 2018, a grand jury returned a true bill accusing O'Neal as follows:

> Count 1. . . [V]iolation of oath by public officer, for that the said Wesley O'Neal . . . between the 1st day of January, 2016, and the 17th day of June, 2018, the exact date of the offense being unknown . . . did unlawfully, willfully, and intentionally, while employed as a corrections officer at the Johnson State Prison, violate the terms of his oath of office by participating in and facilitating acts of abuse against inmates who were incarcerated at the Johnson State Prison, contrary to the laws of [Georgia], . . . It is an essential averment and a material allegation that the acts described in this count are separate and distinct from the acts described in all other counts of this indictment.
>
> Count 2. . . [S]imple battery, for that the said Wesley O'Neal . . . on or about the 1st day of May, 2017, did unlawfully and intentionally make physical contact of an insulting and provoking nature to Thurston

---

[1] *Yancey v. State*, 342 Ga. App. 294, 294 (802 SE2d 702) (2017).

[2] The only other documents in the record are an entry of appearance, O'Neal's discovery demand, and a rule nisi order.

Waller by striking the said Thurston Waller, contrary to the laws of [Georgia] . . . . It is an essential averment and a material allegation that the acts described in this count are separate and distinct from the acts described in all other counts of this indictment.

Count 3. . . [M]aking a false statement, for that the said Wesley O'Neal . . . on or about the 27th day of September, 2017, did unlawfully, knowingly, and willfully make a false statement and representation to an agent of the Georgia Department of Corrections by stating he was not involved in any incidents where Johnson State Prison inmates were assaulted, a matter within the jurisdiction of Georgia Department of Corrections, contrary to the laws of [Georgia]. . . . It is an essential averment and a material allegation that the acts described in this count are separate and distinct from the acts described in all other counts of this indictment.

O'Neal moved to quash the indictment on the ground that he had not been provided notice and an opportunity to be heard before the grand jury deliberated as required by OCGA § 17-7-52. That Code section provides, in relevant part:

Before a bill of indictment . . . against a present or former peace officer charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties is presented to a grand jury, the officer shall be given a copy of the proposed bill of indictment . . . and notified in writing of the contemplated action by the prosecuting attorney. . . . [S]uch notice shall inform such officer . . .

3

[t]hat he or she may request, but cannot be compelled, to testify as a witness before the grand jury regarding his or her conduct. . . .[3]

In his brief in support of the motion to quash, O'Neal argued that at the time the alleged crimes were committed, he was employed as a POST-certified corrections officer, he was on duty during the events, and "there is no evidence that [he] ever stepped away from his duties as a peace officer."

The State opposed the motion, noting the absence of any evidentiary proffer as to the relevant events or factual context. The parties agreed not to have a hearing, and the trial court decided the motion on the briefs and the indictment. The court granted O'Neal's motion, ruling that "the alleged actions charged occurred while the Defendant was in the performance of his duties and it does not appear the Defendant 'stepped away' from his job." The State now appeals.

The State points to the fact that the record contains no factual development of the circumstances alleged in the indictment, so the trial court had no basis to conclude that O'Neal "was in the performance of his duties" when he committed the alleged criminal acts. We agree.

_____

[3] OCGA § 17-7-52 (a).

4

As noted above, OCGA § 17-7-52 applies to indictments "charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties. . . ." Thus, the rights afforded by OCGA § 17-7-52 "come into play if the crimes charged were committed while the officer was in the performance of his duties as a police officer."[4]

> The way to determine whether OCGA § 17-7-52 applies to a peace officer is to specifically examine the "crime which is alleged to have occurred while he or she was in the performance of his or her duties." . . . [T]he operative inquiry is whether the specific conduct that predicated the criminal charges was within the scope of [the defendant's] official duties.[5]

Count 1 charges that O'Neal violated his oath as a public officer.[6] The predicate conduct is "willfully, and intentionally, while employed as a corrections officer at the Johnson State Prison, . . . participating in and facilitating acts of abuse

---

[4] *Wiggins v. State*, 280 Ga. 268, 270 (626 SE2d 118) (2006).

[5] (Citation omitted; emphasis supplied.) *State v. Peabody*, 343 Ga. App. 362, 365 (1) (807 SE2d 107) (2017), quoting OCGA § 17-7-52 (a).

[6] See generally OCGA § 16-10-1 ("Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."); *Bradley v. State*, 292 Ga. App. 737, 741 (2) (665 SE2d 428) (2008) (affirming conviction for violation of an oath by a prison guard).

against inmates incarcerated at the Johnson State Prison, contrary to the laws of [Georgia]." Despite the lack of any other factual context for this count, we conclude that the language accusing O'Neal of abusing inmates "while employed as a corrections officer" sufficiently characterizes O'Neal's conduct as within the performance of his duties such that OCGA § 17-7-52 applies. In the performance of their duties, corrections officers routinely interface with prisoners in situations that can escalate into physical altercations or other circumstances that allegedly could be abusive if done in an excessive and unlawful manner.[7] The indictment does not allege unusual circumstances such as sexual conduct that would be outside an officer's duty under any scenario, despite occurring in uniform while on duty.[8] Absent any

---

[7] See generally *Alford v. Osei-Kwasi*, 203 Ga. App. 716, 719-720 (2) (418 SE2d 79) (1992) ("[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance.") (punctuation omitted); *Bennett v. Parker*, 898 F.2d 1530, 1533 (V) (B) (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding. The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.") (punctuation omitted).

[8] Compare *State v. Galloway*, 270 Ga. App. 184, 185 (606 SE2d 273) (2004) ("performance of official duties does not include rape"), citing *Gober v. State*, 203

additional context in the allegations in the indictment, a common-sense reading of the indictment supports the trial court's conclusion that O'Neal was engaged in his duties at the time of the alleged abuse. Thus, this case is similar to other cases where officers were accused of crimes while engaged in their employment duties, and the trial court did not err by granting the motion to quash Count 1.[9]

But this does not end our inquiry. In the context of OCGA § 17-7-52,

> when an indictment contains multiple counts, it really charges a number of distinct and separate transactions, and it becomes the duty of the trial court to conduct the case, and of the appellate court to review it, just as if it were a consolidation of separate indictments. And these separate indictments give rise to separate and independent cases.[10]

---

Ga. App. 5, (416 SE2d 292) (1992), overruled in part on other grounds by *Dudley v. State*, 273 Ga. 466, 468 (542 SE2d 99) (2001).

[9] See, e.g., *Peabody*, 343 Ga. App. at 365-366 (1) (holding that a police K-9 handler was performing his duty when he allowed his dog to die as a result of being in a hot vehicle); *State v. Lockett*, 259 Ga. App. 179, 181 (576 SE2d 582) (2003) (holding that an on-duty police officer's alleged conduct of speeding and driving too fast for conditions fell within the scope of OCGA § 17-7-52); *State v. Roulain*, 159 Ga. App. 233, 234 (2) (283 SE2d 89) (1981) (confining an inmate in a manner that led to his death occurred during the performance of defendant officer's duty).

[10] *Wiggins*, 280 Ga. at 271-272 (2).

Therefore, when determining whether OCGA § 17-7-52 applies, a court must examine each count of the indictment because prosecution on counts of a separate character that do not implicate OCGA § 17-7-52 may proceed without following the procedures in that statute.[11]

Count 2 alleges that O'Neal committed battery by striking Thurston Waller, and aside from that bare allegation, the count neither mentions O'Neal's employment nor provides any other context for the offense such as the location or whether Thurston Waller was an inmate. The indictment alleges that the acts in each count are separate and distinct acts from the acts alleged in the other counts of the indictment, and nothing in Count 2 reveals information that would support a finding that O'Neal committed the alleged battery while performing his official duty as a corrections officer. In essence, the conduct charged could have been committed against anyone at any time. Accordingly, Count 2 did not implicate OCGA § 17-7-52, and the trial court erred by granting O'Neal's motion to quash this count.[12]

Count 3 alleges that O'Neal lied to an agent of the Georgia Department of Corrections by denying involvement in any incidents where Johnson State Prison

---

[11] See id.

[12] See id.

8

inmates were assaulted. The conduct of lying to an agent of the Georgia Department of Corrections who is investigating him cannot be said to be within the performance of O'Neal's regular job duties at the prison,[13] such as making routine incident reports or filling out a daily activity sheet.[14] Accordingly, Count 3 did not fall within the scope of OCGA § 17-7-52, and the trial court erred by quashing this count.

For the reasons stated above, we affirm the trial court's judgment as to Count 1, and we reverse the judgment as to Counts 2 and 3.

*Judgment affirmed in part and reversed in part. Coomer and Markle, JJ., concur.*

---

[13] See id. at 270 (2) (lying to an outside investigator while being the subject of an investigation is not within the duties of a police officer).

[14] Compare id. at 270-271 (2) (falsely filling out daily activity sheet was within the performance of official duties).