**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 3, 2025**

# In the Court of Appeals of Georgia

A25A0295. GOODDINE v. THE STATE.

MARKLE, Judge.

After five different women accused East Point police officer Richard Gooddine of touching them inappropriately, Gooddine was charged with numerous crimes, including aggravated sexual battery; sexual assault by a law enforcement officer; child molestation; and threatening a witness. Although the jury acquitted Gooddine of several charges, it was unable to reach a verdict on all counts, and the trial court entered a mistrial. Before the State could retry Gooddine, however, he filed a motion to dismiss the indictment on the ground that he was not given notice of the indictment and the opportunity to appear before the grand jury, as required under OCGA § 17-7-52. He also filed a plea in bar, arguing that his acquittal of one of the aggravated sexual

battery counts barred a retrial of the related sexual assault by a law enforcement officer count involving the same victim. The trial court denied both motions, and Gooddine appeals.[1] For the reasons that follow, we conclude that the trial court properly denied the motion to dismiss the indictment under OCGA § 17-7-52 except as to one count alleging child molestation and the two counts alleging sexual assault by a law enforcement officer. Accordingly, we affirm in part and reverse in part the denial of the motion to dismiss. And, because we find those charges for sexual assault by a law enforcement officer must be dismissed, Gooddine's plea in bar is moot.

"We review the trial court's interpretations of law and application of the law to the facts de novo and its findings of fact for clear error." (Citation omitted.) *State v. O'Neal*, 352 Ga. App. 228 (834 SE2d 317) (2019).

So viewed, the record shows that Gooddine was indicted for 19 offenses involving five different women. Following a trial, he was acquitted of nine counts, and the trial court declared a mistrial as to the remaining counts. For the sake of efficiency, we set out only those counts, and the allegations as set forth in the indictment, that are subject to retrial. Gooddine was charged as follows:

---

[1] The trial court stayed the case pending the outcome of this appeal.

| Count | Victim | Offense | Allegations in the Indictment |
|---|---|---|---|
| 4 | 1 | aggravated sexual battery | penetrating the victim's sexual organ with his finger |
| 5 | 1 | child molestation | lifting shirt of child under 16 and exposing breasts |
| 6 | 1 | child molestation | placing victim's hands on his penis |
| 7 | 1 | enticing child for indecent purpose | taking child to wooded area to commit the acts charged in Counts 5 & 6 |
| 8 | 1 | sexual assault by law enforcement officer | sexual contact with victim in custody while he had authority over her |
| 9 | 1 | threats to delay testimony | intimidated victim by threatening to arrest friends |
| 10 | 1 | threats to delay testimony | intimidating victim by coming to hospital where she was reporting the crime |
| 15 | 2 | sexual assault by law enforcement officer | sexual contact with victim in custody while he had authority over her |
| 19 | 3 | child molestation | touched vagina of victim under age 16 |

With respect to these charges, Victim 1 testified at trial that Gooddine digitally penetrated her and touched her vaginal area. She further stated that Gooddine lifted her shirt when he was conducting a search. Victim 2 testified that, when she was caught shoplifting, Gooddine was the officer who transported her to jail. While she was handcuffed and with her seat belt on in the police car, Gooddine said he needed to "check" her. According to Victim 2, Gooddine then pulled out her shirt and stuck his hand in her pants. Once they had arrived at the jail, he again stated he needed to check her and repeated the contact. The jury was unable to reach a verdict on these charges, and the trial court declared a mistrial.

Before he was retried, Gooddine moved to dismiss the indictment under OCGA § 17-7-52 because the State had not notified him of the grand jury proceedings or given him the opportunity to appear and testify. He also filed a plea in bar on the ground that the State could not retry him on Count 15, the sexual assault by a law enforcement officer as to Victim 2, because the jury had acquitted him of sexual battery of the same victim.

The trial court denied both motions, finding (1) Gooddine was not entitled to the protections of OCGA § 17-7-52 because he had "stepped aside from" his duties when he committed the crimes, and (2) there was more than one way to prove sexual contact as alleged in Count 15 for purposes of the plea in bar. This appeal followed.

1. Gooddine first argues that the trial court should have dismissed the indictment because the State failed to follow the procedures in OCGA § 17-7-52, and the trial court erred in finding, as a matter of law, that he "stepped aside from" his duties such that the statutory protections would not apply.[2] We agree that Gooddine was entitled to statutory notice with regard to the two counts of sexual assault by a law enforcement officer, but conclude that the trial court properly denied the motion as to the other counts.

OCGA § 17-7-52 provides that a law enforcement officer alleged to have committed a crime "while he or she was in the performance of his or her duties" is entitled to a copy of the proposed indictment and the opportunity to appear before the

[2] The State initially contended that Gooddine failed to timely move to dismiss or quash the indictment. At oral argument, however, the State effectively withdrew that argument when it recognized that the trial court extended the time in which the parties could file motions. We thus address the merits of Gooddine's arguments and express no opinion as to its timeliness or any waiver.

grand jury to make a statement or testify. OCGA § 17-7-52 (a), (e). And the statute

specifically applies to "all prosecutions, whether for felonies or misdemeanors, other

than nonserious traffic offenses, and no such prosecution shall proceed either in state

or superior court without a grand jury indictment or special presentment." OCGA

§ 17-7-52 (i) (2). As our Supreme Court has noted, "the legitimate purpose of OCGA

§ 17-7-52 . . . is to protect peace officers from harassing or frivolous charges before the

grand jury." *State v. Smith*, 286 Ga. 409, 411 (688 SE2d 348) (2010). The statute thus

recognizes that

> peace officers must make split-second decisions regarding the safety of
> themselves and others that can often involve life and death in the very
> moment that a decision is being made. *When the performance of such
> official duties leads to possible criminal charges*, it is rational to allow for
> additional procedural protections that will reduce the likelihood of a
> frivolous or harassing indictment being pursued against the officer and
> to help to ensure that the peace officer's split-second decisions can be
> fully explored in a more deliberative fashion[.]

(Emphasis supplied.) *Ellis v. State*, 300 Ga. 371, 379 (2) (a) (794 SE2d 601) (2016); see

also *Worthy v. State*, 307 Ga. App. 297, 304 (3) (704 SE2d 808) (2010) (statute "was

intended to afford to police officers the same procedural protection afforded to other

6

public officials as to accusations arising from the performance or non-performance of their official duties.") (punctuation and citations omitted). And, consistent with the statute's purpose, we have held that the statute did not apply "to situations where officers have stepped aside from the performance of their official duties in order to commit crimes." (Citation omitted.) *State v. Peabody*, 343 Ga. App. 362, 364 (1) (807 SE2d 107) (2017).

Thus, the question here is whether the protections of OCGA § 17-7-52 apply to the remaining charges against Gooddine or whether he had "stepped aside" from his official duties. Importantly,

> [t]he way to determine whether OCGA § 17-7-52 applies to a peace officer is to specifically examine the crime which is alleged to have occurred while he or she was in the performance of his or her duties. *The operative inquiry is whether the specific conduct that predicated the criminal charges was within the scope of the defendant's official duties.*

(Citation and punctuation omitted; emphasis in original.) *O'Neal*, 352 Ga. App. at 230. When an indictment charges multiple counts, each count must be considered independently; if some of the counts are not subject to the requirements of OCGA § 17-7-52, those counts may proceed. Id. at 231-232.

Generally, an officer is entitled to the protections of OCGA § 17-7-52 if, when the crime occurred, "the officer was engaged in conduct prescribed by his or her position, but purportedly doing so in a manner contrary to law." *Peabody*, 343 Ga. App. at 366 (1) (statute applied to K-9 officer charged with death of police dog left in his car because transporting the dog was one of officer's duties); see also *Wiggins v. State*, 280 Ga. 268, 270-271 (1) (626 SE2d 118) (2006) (OCGA § 17-7-52 applied to officer charged with false writings and statements after officer falsified daily report to cover up sexual assault he committed while on duty); *Yancey v. State*, 342 Ga. App. 294, 298-299 (1) (802 SE2d 702) (2017) (statute applied to officer charged with burglary after entering sheriff's office after hours and removing safe because there was evidence he was acting in his role as investigator); *State v. Lockett*, 259 Ga. App. 179, 180 (576 SE2d 582) (2003) (statute applied to officer charged with speeding); *State v. Roulain*, 159 Ga. App. 233, 234 (2) (283 SE2d 89) (1981) (correctional officers were entitled to statutory protection in connection with involuntary manslaughter charges after they confined a prisoner under conditions which led to his death).

In contrast, sexual assault is not typically part of an officer's duties. See *State v. Dorsey*, 342 Ga. App. 188, 192 (2) (802 SE2d 61) (2017) (physical precedent only)

8

("Dorsey stepped aside from the performance of his official duties when he allegedly engaged in acts of restraining women against their will, groping their breasts and buttocks, and exposing his genitalia."); *State v. Galloway*, 270 Ga. App. 184, 185 (606 SE2d 273) (2004) (officer charged with rape and sexual assault of person in custody was not entitled to protections of § 17-7-52); cf. *O'Neal*, 352 Ga. App. at 231 (stating in dicta that sexual conduct "would be outside an officer's duties under any scenario despite occurring in uniform while on duty." ).[3]

With these precedents in mind, we turn to the specific counts remaining against Gooddine: (1) aggravated sexual battery; (2) three counts of child molestation; (3) enticing a child for indecent purpose; (4) two counts of sexual assault

---

[3] Gooddine challenges this language in *O'Neal*. As it is dicta, we are not obligated to follow it. *Alexander v. State*, 313 Ga. 521, 529 (3) (870 SE2d 729) (2022) ("dicta is not binding on anyone for any purpose.") (citation omitted). In any event, the statute is plain and unambiguous; it applies to *all* prosecutions, and we are not permitted to exclude an entire set of crimes — such as sexual assaults — from its protections. *Seals v. State*, 311 Ga. 739, 750-751 (4) (860 SE2d 419) (2021), disapproved of on other grounds by *Gonzales v. State*, 315 Ga. 661 (884 SE2d 339) (2023) ("When Georgia law is clear — and here it is — our task is merely to apply it. . . . a court's task is to discern and apply the law's plain meaning as faithfully as we can, not to assess the consequences of each approach and adopt the one that produces the least mischief.") (citation and punctuation omitted).

by a law enforcement officer; and (5) two counts of threatening a witness to delay testimony.

The first issue we must address is what information the trial court, and this Court, can consider in evaluating whether the statute should apply. Notably, the procedural posture of this case is unique; usually, a motion to dismiss charges or to quash the indictment would be filed well before trial. See, e. g., *O'Neal*, 352 Ga. App. at 228, 232. But, here, we have testimony from the first trial. Although the State contends that we may consider only the language in the indictment to determine if Gooddine had "stepped aside from" performing his official duties, we are not persuaded. If that were the limitation, the State could simply avoid the statute by not mentioning the officer's status in the indictment. Access to the protections provided by § 17-7-52 cannot depend on the language used by the prosecutor in drafting the indictment.

Moreover, when a trial court considers a motion to quash based on the failure to meet the requirements of OCGA § 17-7-52, it may hear testimony. See, e. g., *Yancey*, 342 Ga. App. at 295-297 (recounting the testimony presented at the hearing). We see no difference between the testimony at a motion to quash hearing and

testimony presented at trial. Accordingly, we conclude that the trial court, and this Court, may consider the language in the indictment as well as any evidentiary testimony given to determine whether an officer is entitled to the protections of § 17-7-52. Compare *Morrill v. State*, 216 Ga. App. 468, 470 (2) (454 SE2d 796) (1995) (in post-conviction direct appeal, considering denial of pre-trial motion to quash indictment and affirming based on state's allegations); cf. *O'Neal*, 352 Ga. App. at 228 (noting that the only information in the record was the indictment; there was no hearing or other proffer of evidence).

Applying these standards, and considering our case law and the rationale behind the statute as articulated by our Supreme Court, we agree with the trial court that Gooddine was not entitled to the protection afforded by OCGA § 17-7-52 for the following charges: Aggravated sexual battery of Victim 1 (Count 4), in which the victim alleged Gooddine penetrated her vagina with his fingers; child molestation (Count 6), which involved placing the victim's hands on his penis; enticing a child for indecent purposes by taking Victim 1 into a wooded area, placing her hand on his penis and his finger in her vagina (Count 7); and making threats to arrest her friends and coming to the hospital where Victim 1 was being examined to delay her accusations

(Counts 9 and 10). As set out in the indictment and based on the testimony during the first trial, the "specific conduct which predicated the criminal charges" was not within the scope of Gooddine's duties as a law enforcement officer. *O'Neal*, 352 Ga. App. at 230; *Peabody*, 343 Ga. App. at 365-366 (1). Victim 1 alleged that he drove her to a secluded area and forced her to touch him and perform oral sex, penetrated her vagina with his finger, threatened to arrest her friends if she did not comply, and came to the hospital to prevent her from reporting the crimes. These actions cannot reasonably be seen as related to Gooddine's duties as a police officer, and he had "stepped aside" from those duties when he allegedly committed those offenses. *Wiggins*, 280 Ga. at 271 (1) (officer who threatened victim with arrest and drove her to another location for sex); *Dorsey*, 342 Ga. App. at 192 (2) (physical precedent only) (officer was not acting in scope of duties when he restrained women, groped them, and exposed himself to them); *Galloway*, 270 Ga. App. at 185 (officer stepped aside from his duties when he forced women to engage in sexual activities). Additionally, the parties agree that the allegations of child molestation involving Victim 3 in Count 19 did not occur while Gooddine was on duty. Accordingly, as to Counts 4, 6, 7, 9, 10, and 19, Gooddine was not entitled to the protections afforded by OCGA § 17-7-52,

and the trial court properly denied the motion to dismiss. See *Dorsey*, 342 Ga. App. at 192 (2); *Galloway*, 270 Ga. App. at 185.

However, the remaining counts are different. In Count 5, Gooddine was charged with child molestation for lifting Victim 1's shirt. The victim testified that this occurred while Gooddine was conducting a search. In Counts 8 and 15, Gooddine was charged with sexual assault by a law enforcement officer for engaging in some unspecified sexual contact with Victims 1 and 2 while those victims were "in the custody of law enforcement, [and] while [Gooddine] had supervisory and disciplinary authority over [them]." As charged, the contact is alleged to have occurred while Gooddine was supervising the victim in his capacity as a law enforcement officer. And both victims testified that the alleged conduct occurred during a search. See *O'Neal*, 352 Ga. App. at 231. As such, there is some evidence that Gooddine was performing his official duties — conducting a search and transporting a suspect — albeit in an allegedly unlawful manner, and he was entitled to notice and the opportunity to testify before the grand jury to give his version of what might have transpired. See *Peabody*, 343 Ga. App. at 366 (1); see also *Wiggins*, 280 Ga. at 270-271; *O'Neal*, 352 Ga. App. at 230. We thus conclude that Gooddine was entitled to the protections provided by

OCGA § 17-7-52 for these counts of the indictment.[4] Because he was not given those protections, Counts 5, 8, and 15 must be dismissed.

2. Gooddine next argues that the trial court erred by denying his plea in bar with respect to Count 15 (sexual assault by a law enforcement officer) because that charge is barred by double jeopardy in light of his acquittal of aggravated sexual battery involving the same victim.

Given our conclusion in Division 1 that the trial court was required to dismiss Count 15 of the indictment, we need not consider Gooddine's estoppel argument attacking that count.

*Judgment affirmed in part; reversed in part. Doyle, P. J., concurs. Padgett, J., concurs in part and dissents in part.*

---

[4] Although we share the dissent's concern over the inconsistencies in our case law's application of the protections provided by OCGA § 17-7-52, we do not think our result here causes the logistical problems the dissent fears. Notably, the statute itself provides that the officer may only be present during the time he or she chooses to make a statement or testify, and the officer's appearance and testimony occurs at the conclusion of the State's case-in-chief. OCGA § 17-7-52 (d).

A25A0295. GOODDINE v. THE STATE.

PADGETT, Judge, dissenting in part and concurring in part.

I concur with a portion of the majority opinion relating to the applicability of OCGA § 17-7-52 to Counts 5, 8, 15 and 19 of the indictment. I also concur in Division 2 of the majority opinion. However, I must respectfully dissent from the majority's opinion because I believe that OCGA § 17-7-52 applies more broadly in this case.[1]

---

[1] The majority does not reach the plea in bar issue asserted by Gooddine as to Count 15 of the indictment due to its conclusion as to the applicability of OCGA § 17-5-52 to that count and because I agree with that conclusion, I concur with Division 2 of the majority opinion.

OCGA § 17-7-52 mandates certain notices and procedures which must be followed when a peace officer is charged with a crime which is alleged to have occurred while the officer was in the performance of his or her duties. We have developed a judicially-created exemption from that statutory mandate which provides that if the officer has "stepped aside from the performance of their official duties in order to commit crimes," the provisions of OCGA § 17-7-52 do not apply. *State v. Peabody*, 343 Ga. App. 362, 364 (1) (807 SE2d 107) (2017). We have held, "[t]hus, the rights afforded by OCGA § 17-7-52 come into play if the crimes charged were committed while the officer was in the performance of his duties as a police officer." *State v. O'Neal*, 352 Ga. App. 228, 230 (834 SE2d 317) (2019) (citation and punctuation omitted). We went on to hold:

> The way to determine whether OCGA § 17-7-52 applies to a peace officer is to specifically examine the crime which is alleged to have occurred while he or she was in the performance of his or her duties. ... *The operative inquiry is whether the specific conduct that predicated the criminal charges was within the scope of the defendant's official duties.*

Id. (citing *Peabody*, 343 Ga. App. at 365 (1)) (punctuation omitted; emphasis in original)

I am bound by the doctrine of stare decisis to follow the precedent of this Court but because I believe that this judicially-created exemption is unwieldy in its application, has been applied inconsistently in our precedent, and also applies more broadly under the facts of this case than is asserted by the majority, I respectfully dissent.

The majority correctly notes the purpose behind the rule established in OCGA § 17-7-52. Whenever a peace officer is charged with a crime, the allegations are based upon an assertion that the officer performed some act that was outside his or her duties of a peace officer. No peace officer, as part of his or her duties, is expected to commit a criminal act. Therefore, each time a peace officer has a charge being presented to a grand jury alleging that he or she committed a crime, that purported act is outside the duties of that officer. The only circumstance in which the provisions of OCGA § 17-7-52 clearly would not apply is where the officer was off duty and acting as an ordinary citizen at the time of the alleged criminal act, as was charged in Count 19 of this indictment.

The majority opinion has correctly chronicled our precedent where we have found that officers are entitled to the protections afforded under OCGA § 17-7-52 in circumstances where the officer clearly acted in a manner not expected or authorized

3

as part of that officer's duties as a peace officer. However, our precedent can be read as inconsistent on this point.

For example, in *Mize v. State*, 152 Ga. App. 190, 191-192 (1) (262 SE2d 492) (1979), we held that an officer's performance of official duties does not include the commission of burglaries and that OCGA § 17-7-52 would not apply. In *Morrill v. State*, 216 Ga. App. 468, 469-470 (2) (454 SE2d 796) (1995), we held that the provisions of OCGA § 17-7-52 did not apply to an officer charged with burglary, among other crimes, even though the officer was clearly acting in his role as a peace officer in order to effectuate part of a larger criminal scheme. However, in *Yancey v. State*, 342 Ga. App. 294, 299 (1) (802 SE2d 702) (2017), we found OCGA § 17-7-52 did apply when the officer was charged with burglary.[2]

Application of our precedent to uncommon factual scenarios can be difficult for trial judges to administer. However, the truly unique facts of this case illustrate just how difficult it can be for trial judges to make a determination whether the allegations against an officer trigger the provisions of OCGA § 17-7-52 or involve a situation

---

[2] The opinion in *Yancey* noted that the case was factually distinguishable from *Mize* and *Morrill* but, in the final analysis, all three cases involved a peace officer being charged with the offense of burglary which was purportedly committed while the officer was simultaneously acting as a police officer.

4

where the officer stepped outside of his/her duties in a manner that renders § 17-7-52 inapplicable.

In this case, Count 15 of the indictment lists Victim 2 as the purported victim. The record shows that Victim 2 was stopped by Walmart employees for allegedly shoplifting and those employees called for a uniformed officer to respond. The first responding officer "patted [her] down," and that officer called for other officers to transport Victim 2 to jail. Victim 2 identified Gooddine as one of the transport officers. Gooddine had her in handcuffs and escorted her out to the patrol vehicle while the other officer who arrived to transport her remained inside the store, collecting her belongings. Once she was in the patrol vehicle, still handcuffed, Gooddine allegedly secured her seat belt and as he did so, he "checked [her]," telling her it was "just procedure." She testified that Gooddine pulled her shirt out, pulled her stretch pants out, and stuck "his finger and hands down [her] pants." The second officer then returned from the store to the vehicle and drove, while Gooddine occupied the front passenger seat. Once stopped at the jail, the officer who had been driving retrieved her belongings from the trunk and went inside, while Gooddine came to the back seat to get her. She testified that Gooddine opened the vehicle door and told her "I need to check you one more time[,]" at which point he pulled her stretch

5

pants out "and stuck his hand down in there[,]" placing his hand on top of her vagina. The majority concluded that OCGA § 17-5-52 applies to Count 15 of the indictment and I fully concur in that conclusion.

As to the charges relating to Victim 1, the majority opinion concludes that two of the seven counts — specifically Counts 5 and 8 — arose from conduct that was within the scope of Gooddine's official duties.[3] The opinion finds that in Count 5, Gooddine was charged with child molestation for lifting Victim 1's shirt, and that Victim 1 testified that this crime occurred while Gooddine was conducting a search. And with respect to Count 8, the opinion notes that, according to the indictment, he was charged with sexual assault by a law enforcement officer for engaging in some unspecified sexual contact with Victim 1 while Victim 1 was "in the custody of law enforcement, [and] while [Gooddine] had supervisory and disciplinary authority" over her, which the opinion interprets as "hav[ing] occurred while Gooddine was supervising the victim in his capacity as a law enforcement officer." Also with respect to Count 8, the opinion points out that Victim 1 "testified that the alleged conduct occurred during a search." While I also concur with the conclusion reached by the

_____

[3] According to the indictment, Counts 4-10 all allegedly occurred on August 20, 2018 and involved Victim 1.

6

majority relating to Count 8, it appears that the conduct giving rise to protected actions of Gooddine identified in Counts 5 and 8 could overlap with the conduct giving rise to Counts 4, 6, 7, 9, and, to a lesser extent, Count 10, all of which the majority concluded were not covered by the statute.

Victim 1 had two interactions with Gooddine, the first on July 21, 2018, and the second on August 20, 2018. She was 15 years old at the time. Gooddine was acquitted of all counts relating to the July 21, 2018 interaction with Victim 1.

As to the August 2018 incident involving Victim 1, the testimony at trial revealed that Victim 1 was with friends and that their car stopped in a park to allow one of the friends to use the restroom. Gooddine drove up in his marked patrol car, wearing his uniform, and conducted a search of the vehicle. After allegedly locating alcohol and a bb gun in the car, Gooddine allegedly performed a search of Victim 1, pulling her shirt "all the way up," lifting her bra, and pulling her pants down.[4] Gooddine then allegedly told the other occupants of the car that Victim 1 was out past her curfew and that he was going to take her home. Then, after a protracted series of events during which Victim 1 remained in the rear of Gooddine's patrol car while

---

[4] This testimony seems to form the basis of Count 5 of the indictment.

Gooddine clearly performed duties in his role as a police officer involving other individuals, Gooddine allegedly sexually assaulted Victim 1 in his patrol car after parking at the rear of Victim 1's sister's apartment complex. Thereafter, Gooddine allegedly returned Victim 1 to her sister's apartment. Count 10 seems to be based upon the fact that Gooddine reported to the hospital later that evening seeking to speak with "the rape victim."

The facts relating to Victim 1 concerning the August 2018 incident are recited only to point out how intertwined the facts seem to be in this case. The majority held that some of the allegations trigger the provisions of OCGA § 17-7-52 while other allegations do not. However, it appears that all of the allegations relating to the interaction between Victim 1 and Gooddine in August 2018 suggest that Gooddine was acting in his role as a police officer when these events occurred. Putting aside the logistical difficulties such a ruling would have when determining which portions of the grand jury proceedings Gooddine would be entitled to attend and which he would not, I conclude that the statute should apply to more of the allegations made within the indictment relating to Victim 1.

It is indisputable that any sexual assault by a peace officer is never within the scope of the officer's duties. Similarly, there is no doubt that an interaction between

a peace officer and an alleged victim of sexual assault by that officer could begin as an activity within the ambit of OCGA § 17-7-52 but evolve into an activity that is clearly outside the scope of the officer's official duties. In *State v. Galloway*, 270 Ga. App. 184, 184 (606 SE2d 273) (2004), a police officer was indicted on two counts of rape, two counts of sexual assault against a person in custody, and two counts of violating his oath as a public officer. We held that the officer's duties do not include rape or any other sort of sexual assault, so the provisions of OCGA § 17-7-52 did not apply. *Galloway*, 270 Ga. App. at 185 (2004). In that case, despite the officer being specifically charged with two counts of sexual assault against a person in custody, we found § 17-7-52 inapplicable. Id. In *Galloway*, the alleged offenses committed by the peace officer occurred while the officer was in uniform, providing security at a club. *Id*. However, in this case, Gooddine was acting as a peace officer when the alleged sexual assaults against Victim 1 occurred. Therefore, *Galloway* is factually distinguishable from the case before us involving Gooddine.

The majority concludes that Gooddine is entitled to the protection afforded by OCGA § 17-7-52 for some of the events that allegedly occurred during Gooddine's interaction with Victim 1 in August 2018, but not for others. Extricating those actions to which the statute applies from those to which the statute does not apply is

9

exceedingly difficult under the particular facts of this case, both in terms of the logistics of presenting the case to the grand jury and in terms of law. With the unusual benefit of the extensive trial testimony in this case, it appears that Victim 1 gave conflicting testimony about whether the alleged sexual misconduct occurred during the search conducted at the park or only once he had stopped the patrol car near the rear of the apartment complex. A determination of the applicability of OCGA § 17-7-52 is usually made pretrial and is not based upon actual sworn testimony. However, we have that testimony in this case. Because of the record in this case, I conclude that the provisions of OCGA § 17-7-52 apply to the entire interaction that occurred between Victim 1 and Gooddine in August 2018, and that because Gooddine was not afforded the rights set forth within the statute, Counts 4 through 10 of the indictment must be dismissed.[5]

Therefore, I conclude that in this case, the majority reached the correct result as to Counts 5, 8, 15 and 19 of the indictment and in Division 2 of the majority

---

[5] For clarity, I would also conclude that Count 15 must be dismissed for the same reason, which is the same conclusion reached by the majority. In their appellate briefing, the parties have agreed that the allegations contained in Count 19 allegedly occurred when Gooddine was off duty. Therefore, OCGA § 17-7-52 would not apply to the allegations contained in Count 19.

opinion. I fully concur with the majority as to those counts and issues. I respectfully dissent from the majority's conclusion relating to Counts 4, 6, 7, 9 and 10 for the reasons set forth above.